### In re McMURTREY & SMITH.

(District Court, W. D. Texas, Austin Division. December 30, 1905.)

#### No. 413.

1. BANKRUPTCY—PARTNERSHIP—INSOLVENCY.

    A partnership is insolvent and subject to adjudication as a bankrupt when the partnership property is insufficient to pay its debts, regardless of the individual property of the partners.

2. SAME—COMPUTATION OF INDEBTEDNESS—CLAIMS OF PREFERRED CREDITORS.

    The transfer by an insolvent partnership of all of its property, consisting of a stock of merchandise, to certain of its creditors, on their demand and threats to sue, which property was accepted in full settlement of claims largely exceeding its value, constituted a voidable preference, under Bankr. Act. July 1, 1898, c. 541, § 60b, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445], where other creditors were left unpaid; and, since the claims of the preferred creditors are provable debts on surrender or recovery of the preference, they must be taken into account in determining whether or not the firm's indebtedness exceeds $1,000, and renders it subject to proceedings in involuntary bankruptcy.

In Bankruptcy. On review of order of Franz Fiset, referee.

The questions involved arise upon a petition, filed by McMurtrey & Smith, to review the order of the referee adjudging them involuntary bankrupts. The case is fully stated in the following opinion of the referee:

    The petition in this cause seeks, at the instance of creditors, the adjudication of the firm of McMurtrey & Smith and of its members on the ground of preference made by the firm. The firm, as such, resists the adjudication; but the individual members interpose no answer. The grounds relied on by the firm for a dismissal of the petition, and contained in the special answer, are: (1) That the firm was not insolvent at the date of filing the petition, nor since said time. (2) That at the time of filing the petition the firm did not, and does not now, owe debts to the amount of $1,000. The court has not the benefit of the testimony of witnesses, and the issues are to be decided on an agreed statement of facts, which is very meager and far from satisfactory as a presentation of the facts bearing on the questions involved. The statement being short, it is here copied in extenso:

    "It is agreed: That on or about the 30th day of January, 1905, McMurtrey & Smith, then merchants doing business in the city of Lockhart, Caldwell county, Tex., were indebted to various creditors to the amount of about $4,000. That upon the said 30th day of January, 1905, the said McMurtrey & Smith sold, transferred, and delivered their entire stock of merchandise, then located in the city of Lockhart, Caldwell county, Tex., to certain of their creditors, to wit, the First National Bank of Lockhart, A. L. Davis, Joseph Landa & Co., Denton Milling Company, and the Lockhart Grocery Company. Said stock of merchandise at the time of the sale and delivery invoiced at the original cost price about $1,800. That said stock of merchandise was delivered, sold to the above-named parties, in full satisfaction and settlement of the account and debts due by McMurtrey & Smith to said creditors. It is further agreed

that, after the settlement of the debts due by the said McMurtrey & Smith to the creditors purchasing their said stock of merchandise, said McMurtrey & Smith did not owe debts to the amount of $1,000, and did not owe debts to the amount of $1,000 at the time of the filing of the petition of bankruptcy against them, to wit, April 25, 1905, and does not now owe debts to the amount of $1,000, indebtedness of said McMurtrey & Smith was reduced below $1,000 by said sale. It is further agreed: That the stock of merchandise sold and delivered by McMurtrey & Smith to the creditors named in section 1 of this agreement was sold by said McMurtrey & Smith at the earnest demand of said creditors, and was only sold after said creditors had informed said McMurtrey & Smith that, unless said merchandise was sold and delivered to them, they would file suit on their claims, levy on said merchandise, and have the same sold to satisfy their judgment. That for the purpose of saving the trouble and expense of several lawsuits, and for the purpose of settling and discharging as much of their indebtedness as possible with their property, they made said sale and delivered said merchandise to said creditors. It is further agreed that the said McMurtrey & Smith are insolvent, and are not able to pay their indebtedness, and have no property out of which their said indebtedness can be made. The said W. R. Smith owns a house and lot in the city of Lockhart, Tex., of the value of $1,650, not partnership property, and occupied by him as a home. Supplementary to the above it is further agreed that the said McMurtrey & Smith, at the time of the transfer and delivery of their said stock of goods to some of their creditors as aforesaid, were insolvent and were not able to pay their indebtedness in full, and have no property out of which their debts can be made or could have been made at the time of said sale, except that the said W. R. Smith owns a house and lot in the city of Lockhart, Tex., of the value of $1,650, not partnership property, and occupied by him as a home."

The plea denying insolvency sets out that at the time of filing the petition the firm did not owe debts to the amount of $1,000, and that one of the parties owned in fee simple certain real estate of the market value of $2,000. From the agreed facts it appears that at the time the act of bankruptcy complained of was committed, the firm owed debts to the amount of about $4,000, including the claims then preferred. The firm was solvent if the homestead of one of the partners and his individual property, of the value of $1,650, be included as an asset of the firm and the debts then settled by preference be excluded as a liability. The only assets of the firm disclosed by the agreed statement of facts consisted of a stock of goods invoicing at cost $1,800. This amount, added to the value of said homestead, would still be less than $4,000, the aggregate of the firm debts. But it is contended by the bankrupts that the indebtedness of the firm through the act which is the basis of the petition was reduced to less than $1,000, and that said real estate, the individual property of one of the partners, valued in excess of that amount, and counted as an asset of the firm, its only asset, rendered the firm solvent. This position cannot be maintained. To arrive at this conclusion it is not necessary here to determine what is a liability of the firm, although that question arises on the other defense interposed by the firm and is discussed in that connection, with the result that the claims in this case settled by a preference should be counted as debts. The agreed facts admit that, if the homestead, the individual property of one of the partners, is not counted as a firm asset, then the firm is insolvent. That it cannot be so counted appears clearly from the reading of the bankruptcy act.

Section 5 of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 547 [U. S. Comp. St. 1901, p. 3424]) expressly states that "a partnership may be adjudged a bankrupt." Under the bankruptcy law of 1867 (14 Stat. 534, c. 176, § 36) two or more persons who were partners in trade might be adjudged bankrupt. The difference in the two acts is marked, and the provision of the present act has given rise to the doctrine of the entity of a partnership, as different and distinct from the individual members composing the firm, and the entity idea adopted by section 5 of the law of 1898 is carried out in the act as well as in the forms and rules of the Supreme Court. See Collier on Bankruptcy (5th Ed.) p. 68, and note. The definition of insolvency, as given

in section 1 (15) of the act (30 Stat. 544 [U. S. Comp. St. 1901, p. 3419]), is that "a person shall be deemed insolvent within the provisions of this act whenever the aggregate of his property, exclusive of any property which he may have conveyed, transferred, concealed or removed, or permitted to be concealed or removed, with the intent to defraud, hinder or delay his creditors, shall not at a fair valuation be sufficient in amount to pay his debts." By section 1 (28) 30 Stat. 545 [U. S. Comp. St. 1901, p. 3420], it is provided that the masculine gender includes partnership. Section 5f requires that the proceeds of the partnership property shall be appropriated to the payment of partnership debts and the individual assets of each partner to the payment of his individual debts. From these provisions it follows that, if the partnership (the entity that may be adjudged bankrupt) has not assets sufficient at a fair valuation to pay its debts, then the partnership is insolvent, and no property, which in the first instance is devoted to the payment of the individual debts of the partners, can be considered in determining the solvency or insolvency of the partnership as such. On the question of insolvency the firm and its individual members are practically strangers to each other. Hence the real estate, the individual property and homestead of one of the partners, cannot be counted as part of the partnership property, and, this item being eliminated, under the agreed statement of facts, the firm is insolvent.

The remaining defense to this proceeding denies that the firm owed debts to the amount of $1,000. It appears from the agreed facts that at the time the alleged preferences were made the indebtedness of the firm was about $4,000, and that by reason of the alleged preference (whereby several creditors were settled with) the debts of the firm were reduced below $1,000. Should these preferred debts be counted, or are they excluded in ascertaining the aggregate indebtedness of the firm proceeded against in bankruptcy by virtue of said preference? Collier on Bankruptcy (5th Ed.) p. 441, states that, "where the total of the indebtedness is at issue, all debts preferentially paid must be counted. Were it not for these rules, a debtor might even successfully resist a petition by collusion with creditors whom he had preferred." This direct point has been decided by Judge Brown, of the Southern District of New York, in the case of In re Christ. Tirre, 2 Am. Bankr. Rep. 493, 95 Fed. 425, and the same conclusion was arrived at in Re F. F. Cain, 2 Am. Bankr. Rep. 379; and in Re Norcross, 1 Am. Bankr. Rep. 644. An equal distribution of the assets of an insolvent among the creditors of the same class is the aim and policy of the bankruptcy law. It denounces the unequal treatment of creditors, makes it a ground for involuntary proceedings against the insolvent, and authorizes recovery from the creditor who is chargeable with notice of preference when accepting payment beyond his pro rata. Will the law countenance an action whereby the very act of evading the law is interposed as a defense against its application? Can a debtor be heard to say: "If I make a preference while insolvent, the bankruptcy law will be invoked and will administer my affairs for the benefit of all my creditors; but, if I prefer for an amount large enough to leave less than $1,000 in debts outstanding, the bankruptcy law will take its protecting hands away from the creditors whom I left unpaid?" Evidently the answer to this question is in the negative, unless the law expressly answers it in the affirmative, or, being silent, the conclusion from other provisions of the law is irresistible that the question must be answered in the affirmative.

In order to be adjudicated a bankrupt in an involuntary proceeding the law requires that the partnership must owe debts to the amount of $1,000 or over. Section 4, 30 Stat. 547 [U. S. Comp. St. 1901, p. 2423]. Section 1(11), 30 Stat. 544, [U. S. Comp. St. 1901, p. 3419], says that debt "shall include any debt, demand or claim provable in bankruptcy." Section 57g, 30 Stat. 560 [U. S. Comp. St. 1901, p. 3443], provides that the "claims of creditors who have received preferences voidable under section 60b [30 Stat. 562 (U. S. Comp. St. 1901, p. 3445)] * * * shall not be allowed unless such creditors shall surrender such preferences." * * * The act has no provision which excludes claims from proof when such claims have received preferences which are not voidable under section 60b; and, taking this into consideration, together with the provision of section 57g, such claims are provable and may

be allowed in bankruptcy and thereby become claims against the estate. The law, therefore, authorizes, under section 57g, the proof and allowance (after surrender) of claims having received voidable preferences; and it further authorizes the proof and allowance of claims having received preferences not voidable. Hence all claims having received preferences, void or voidable, are provable in bankruptcy and are debts against the estate, and therefore they enter into the computation of the aggregate owing by the bankrupt for the purpose of determining whether or not the bankrupt owes debts to the amount of $1,000 or over. It may be objected, however, that claims paid off in full by preferences should not be counted, as no creditor would surrender the amount received by him for the purpose of receiving less on a ratable distribution in bankruptcy. The act seems to answer this question by not excluding any preferences from proof and allowance; but a discussion is not necessary, in view of the character of the preferences in this case. If they are voidable, the trustee, in conscientious performance of his duties, must recover them, and thereupon the claims paid by them are, under section 57g, of equal standing with any other provable claims, even if the recovery of the preferences is had at the end of litigation (Keppel v. Tiffin Savings Bank, 13 Am. Bankr. Rep. 552, 197 U. S. 356, 25 Sup. Ct. 443, 49 L. Ed. 790), and they must be counted in computing the amount owing by the estate.

Are the preferences alleged to have been made in this case voidable under section 60b? A person shall be deemed to have given a preference if, being insolvent, he has within four months before the filing of the petition, or after the filing of the petition and before the adjudication, made a transfer of any of his property, and the effect of the enforcement of such transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class. Section 60a. The partnership was insolvent when, within four months before the filing of the petition, it transferred its stock of merchandise. The facts show that the firm has no property out of which its debts can be made or could have been made at the time of sale. No property outside of the merchandise is disclosed. Hence the enforcement of the transfer would enable the creditors so preferred to obtain a greater percentage of their debt than other creditors of the same class. The transfer, it may here be stated, was made with the intention of giving a preference to the creditors obtaining it. The law presumes this intention on the fact of insolvency. But such intention is also directly avowed, as the agreed facts show the firm made the transfer for the purpose of settling and discharging as much of its indebtedness as possible with its property. The facts disclose no other property of the firm. Section 60b provides that "if a bankrupt shall have given a preference and the person receiving it or to be benefited thereby, or his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee, and he may recover the property or its value from such person."

The firm having given a preference, it remains to be determined whether or not the creditors receiving the transfer of said stock had reasonable cause to believe that it was intended thereby to give them a preference. The clause "reasonable cause to believe" has been considered in numerous cases decided by lower courts and in cases decided by the United States Supreme Court, particularly in the case of Grant v. Bank, 97 U. S. 80, 24 L. Ed. 971, and Buchanan v. Smith, 16 Wall. 277, 21 L. Ed. 280. From all prior decisions the Circuit Court of Appeals, Seventh Circuit, in Re Louis A. Eggert, 4 Am. Bankr. Rep. 449, 456, 102 Fed. 735, 741, 43 C. C. A. 1, 7, deduced the following rule not controverted in subsequent cases: "That the creditor is not to be charged with knowledge of his debtor's financial condition from mere nonpayment of his debt, or from circumstances, which give rise to mere suspicion in his mind of possible insolvency; that it is not essential that the creditor should have actual knowledge of, or belief in, his debtor's insolvency, but that he should have reasonable cause to believe his debtor to be insolvent; that if facts and circumstances with respect to a debtor's financial condition are brought home to him, such as would put an ordinarily prudent man upon inquiry, the creditor is chargeable with knowledge of the facts which such

inquiry should reasonably be expected to disclose ". The agreed facts do not directly state that the creditors knew the firm to be insolvent, but they show that the entire stock of merchandise was sold by the firm at the earnest demand of said creditors and after the creditors had informed the firm that, unless the stock of goods was sold to them, the creditors would file suit on their claims, levy on the merchandise, and have it sold to satisfy their judgment. These facts are necessarily the result of other underlying facts and circumstances that must have been in the mind of the creditors. Ordinary normal business transactions do not lead to such extreme results. The bills must have been past due, as otherwise they could not be sued upon, apprehension of a grave character as to final payment must have been felt; and the creditors must have become satisfied that the stock of goods was the property they had to look to in order to realize on the debt. They demanded a sale of the whole stock—an extreme way for a creditor to collect his debt from a retailer and one utterly out of the regular course of trade. Potent reasons must have induced the creditors to make such a demand.

The agreed facts show the stock to have invoiced at cost $1,800, that prior to the transfer the debts of the firm amounted to $4,000, and that by the transfer they were reduced to less than $1,000; hence the aggregate claims of the creditors demanding and obtaining the transfer must have been about $3,000. The creditors took in full settlement of the debts of $3,000 a stock of $1,800 in value. No business man would take a broken stock in payment of his bills, unless that was the only chance to collect his debt. No business man would take such a stock, of the value of $1,800 in payment in full of a $3,000 debt, unless satisfied beyond doubt that by taking the stock he would get more than he would if he did not take the property. By delivering up the unsatisfied balance of $1,200 the creditors tacitly admit that it was an absolute loss, from which it follows cogently that the creditors must have considered the firm absolutely and irredeemably bankrupt. Merchants collecting their debts do not ordinarily act in conjunction with other creditors. In this case the seriousness of the situation must have brought together the various creditors, and it resulted in the very peculiar outcome that a number of creditors jointly took a broken stock of goods of the value of $1,800 for the purpose of settling $3,000 of their debts; and, on the other hand, the firm paid $3,000 of its debts by the transfer of $1,800 of merchandise—all its merchandise. Not merely one creditor believed his claim to be in the balance, but a number discussed, reviewed, and exploited the situation, with the result that they agreed to take and divide among $3,000 in claims a retail stock of $1,800. The climax of this transaction—the actual transfer—I feel convinced, could not have been reached unless the transferees had satisfied themselves that the firm was hopelessly insolvent, owed other debts besides those due to the transferees, and that the sale would net them more than they could otherwise hope for, more than the remaining creditors could get, if anything was left. This conclusion, it seems, is irresistible if we consider how, normally, prudent business men would act who deal with debtors who are slow, but who are not flagrantly insolvent. But, in order to make the transfer voidable, the act does not require that the creditors should be possessed of "knowledge" of the insolvency and of the subsequent intention of the firm to give a preference by the transfer. If the creditors had only "reasonable cause to believe" that a preference was intended, the transaction is voidable under section 60b. The act requires much less than knowledge, and, admitting for the sake of argument that knowledge of the financial condition and of the intention of the firm has not been brought home to the preferred creditors, can it reasonably be suggested that an ordinarily prudent man, with the facts and circumstances in mind as they are disclosed in this case, would not have been put upon inquiry as to the solvency and the intention of the firm in making the transfer, and that the inquiry, if properly pursued, would not have resulted in reasonable cause to believe that the firm was insolvent and that by the transfer a preference was intended? If the inquiry only led to reasonable cause to believe the firm insolvent, the surrender is enforceable, as the law in that event charges the creditor with

notice that a preference was intended. None of the facts or circumstances of this case are consistent with the suggestion that they did not call on the creditors to investigate, and that the investigation would not have led to that scant information that is necessary to make a preference voidable. The adjudicated cases generally show that fewer facts than are developed in this case and more subtle circumstances have been held sufficient to put the stamp of disapproval of the law on transactions smacking of preference. See Collier on Bar¹ruptcy (5th Ed.) p. 459, and cases cited in notes. See, also, In re An .rews, 14 Am. Bankr. Rep. 247, 135 Fed. 599; In re Gilbert, 8 Am. Bank.: Rep. 101, 112 Fed. 951.

Without resting this decision on the proposition that all preferred debts should be counted in computing the amount owing by a bankrupt, the facts and circumstances attending the transfer in the present case render it clearly voidable under section 60b; and as a surrender should be enforced by the trustee, the result will be that after such surrender, even at the end of litigation (Keppel v. Tiffin Savings Bank, 13 Am. Bankr. Rep. 552, 25 Sup. Ct. 448, 49 L. Ed. 790), the claims of the preferred creditors will be valid debts against the estate, as much so as any debts now allowable. The bankrupts having been insolvent at the time of said preferential transfer, and the amount thereof added to the other debts clearly making the debts of the firm in excess of $1,000, the firm will be adjudicated, and also the individual members, as they have not interposed any defense against their individual adjudication.

George E. Shelley and J. F. Carl, for petitioning creditors.
E. B. Coopwood and Allen & Hart, for bankrupts.

MAXEY, District Judge. The court concurs in the conclusion announced by the referee in the foregoing elaborate and well-considered opinion. An order will therefore be entered, affirming the order passed by the referee adjudging McMurtrey & Smith bankrupts, in accordance with the prayer of the petitioning creditors.