CURTISS v. KINGMAN et al.

(Circuit Court of Appeals, First Circuit. January 30, 1908.)

No. 748.

BANKRUPTCY—PREFERENCES—EVIDENCE.

On the state of facts shown by this record relating to an alleged preference in bankruptcy, Hardy v. Gray, 144 Fed. 922, 75 C. C. A. 562, followed.

Appeal from the District Court of the United States for the District of Massachusetts.

William B. French and Elmer L. Curtiss, for appellant.

John M. Kendricken (William A. Quigley, on the brief), for appellee Gardner J. Kingman.

Edward N. Goding, Hugh W. Ogden, and Whipple, Sears & Ogden, for appellees Harold Dwight Corey, Parker L. Milliken, and William K. Corey.

Before PUTNAM and LOWELL, Circuit Judges, and ALDRICH, District Judge.

PUTNAM, Circuit Judge. The real parties in this case are Curtiss, trustee in bankruptcy, and Kingman. The other parties respondent have no interest. The proceeding was a bill in equity brought in the District Court to recover a sum of money alleged to have been received by Kingman from the bankrupt by transfer of credits from the bankrupt to the other respondents, which transfer it is alleged operated as a preference to Kingman under the statutes in bankruptcy. The only question below was whether a preference was intended by the bankrupt and knowingly received by Kingman. The District Court found for Kingman in an opinion which carefully and clearly sets forth the facts. We adopt the opinion as containing a correct rehearsal of the circumstances; and, so far as it represents the standpoint of Kingman, we also adopt its conclusions, as the same is in line with our reasoning in Hardy v. Gray, 144 Fed. 922–928, 75 C. C. A. 562. Our views therein have been concurred in by the Circuit Court of Appeals for the Sixth Circuit in First Nat. Bank of Louisville, Ky., v. Holt (C. C. A.) 155 Fed. 100, 103.

Under the circumstances, we are not required to express our views as to the position of the District Court from the standpoint of the bankrupt; and, consequently, we refrain from doing so because we would hesitate to unnecessarily embarrass any application which the bankrupt has made for his discharge, or may make. All we need say in regard thereto is that Hardy v. Gray shows that we are not inclined to give the statutes in reference to preferences any artificial interpretation or application.

The decree of the District Court is affirmed, and the appellees recover their costs of appeal.

NOTE.—The following is the opinion of Dodge, District Judge, in the court below:

DODGE, District Judge. The complainant in this bill is the trustee in bankruptcy of Hunt & Vickers, stockbrokers, whose place of business was in Brockton, Mass. He seeks to recover back, for the benefit of the estate, property transferred by the bankrupt within four months before the bankruptcy. The transfer is alleged to have been with intent to hinder, delay, and defraud creditors, and is also alleged to have been with intent to prefer the defendant Kingman. The case has been heard by the referee in bankruptcy, under a rule referring it to him as master. His report, and also the evidence taken before him, are now before the court on exceptions filed by the complainant. No exceptions have been filed by the defendants.

Before the master, the complainant appears to have based his alleged right to recover on the ground of preference only. The report makes no reference to the allegations of an intent to hinder, delay, and defraud.

The master has found that the defendant Kingman did not have reasonable cause to believe the bankrupts insolvent when the transfer was made, and did not have reasonable cause to believe that they intended to give him a preference. Were these conclusions wrong in view either of the facts found and reported by the master or in view of all the evidence before him? These are the questions raised by the exceptions, and, with the exception of questions as to the admissibility of evidence, the only questions now open.

159 F.—56

The transfer complained of was made April 11, 1904. The master has found and reported that the defendant Kingman was on that day a creditor of the bankrupts, and that they were on that day insolvent within the meaning of the bankruptcy act (Act July 1, 1808, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]). He has further found and reported that, by the transfer, Kingman was given considerable advantage over the other creditors, and that this constituted a preference within the meaning of the act. He has further found and reported that the bankrupts intended this to be the case. No objections were made, and no exceptions are taken to any of the above findings, and they stand unquestioned for the purposes of this hearing. The proceedings in bankruptcy began on August 1, 1904, within four months after the transfer in question; so that it is voidable, and the trustee entitled to the relief sought by his bill, if the master ought also to have found that Kingman had "reasonable cause to believe that it was intended thereby to give a preference" within the meaning of section 60b, 30 Stat. 562, c. 541 [U. S. Comp. St. 1901, p. 3445].

The master's report contains no express and distinct finding that the bankrupts knew themselves to be insolvent on April 11, 1904. It may well be, however, that the existence of such knowledge was regarded as implied in the finding that they intended a preference. That they had such knowledge or are chargeable with it is clear on the evidence. They kept books, the property belonging to them was of such a nature as to leave little room for uncertainty regarding its fair valuation at any given time, they could very readily tell with substantial accuracy just how they stood, and on the day in question, after consultation in regard to the matter, they had recognized the fact that their contract liabilities were very heavily in excess of their property, and that $5,000 more must be borrowed in order to enable them to go on. The evidence of intent to prefer, therefore, which the master has found to have existed on the part of the bankrupts, consisted, in part at least, in knowledge possessed by the bankrupts that they were heavily insolvent at the time they engaged in the transaction found to have given the defendant Kingman an advantage.

The master has found that Kingman had been dealing with the bankrupts since February 10, 1903, or for more than a year before the transfer; that his dealings with them had consisted in purchases of various stocks on margin; that his contracts with them of this kind during the period referred to were frequent; that he spent three or four hours each day in their place of business, saw the business carried on by them, knew that they kept liquor in their office, and knew that they "drank during business hours"; that he knew they had made many such contracts with other brokers on their own account; that he knew also that they had contracts with other customers binding them to deliver stocks; that he had frequently seen these customers and personally knew some of them; that he knew of no property owned by the bankrupts except their interest in their contracts with other brokers; and that his object in bringing about the transaction which involved the transfer complained of was that his account might be safe, because he expected to carry the stocks which it covered for a long time, until he could get what he wanted for them, and desired to have them in a condition so that he could sell out and get his money whenever he wanted it.

The master has further found that Kingman stated to one Howard and also to one Brown that he "got out from the bankrupts because he did not like the look of things." The evidence regarding the statement to Brown was admitted against the defendant's objection. The defendant has not excepted to the report upon this or any ground, and the evidence thus admitted might be disregarded without affecting any material finding or conclusion in the report.

Against the complainant's objection that it was too remote, the master admitted evidence that before beginning his dealings with them in February, 1903, Kingman inquired about the bankrupts' financial responsibility of a reputable firm of brokers in Boston, and received the assurance of that firm that they "were all right." The complainant has duly excepted. My ruling is that the evidence was properly admitted, its weight being for the master

to determine. But, without this evidence, the utmost effect of the evidence remaining is to show that Kingman "doubted the bankrupts' financial responsibility in a general way," and this the master has found. There can be no question that, whether he received the information testified to or not, he knew enough at the time of the transfer to raise such a doubt in the mind of a reasonably prudent person occupying his relation to the bankrupts. It does not follow, however, that he suspected or had reason to suspect them to be insolvent at the time of the transfer. He might well have doubted whether they were financially strong enough to be secure against all such emergencies in the stock market as might occur during a period such as the operations he had undertaken might require, without having sufficient reason to suspect that on April 11, 1904, their property was of a value less than the amount of their liabilities.

As to the amount of the bankrupts' assets, or their liabilities on the day mentioned, it does not appear that he had any actual knowledge at all. The master has found that he made no inquiry of them as to their liabilities or assets. The only way in which he can be charged with knowledge of their insolvency is by holding that he was put on inquiry, and must therefore be regarded as having known all that inquiry of the bankrupts would have revealed, supposing them to have disclosed to him the whole truth about their situation. The complainant argues that such knowledge must be imputed to him, and that by reason of it he must be held to have had reasonable cause to believe that the bankrupts intended to prefer him by the transaction in question.

I agree with the master that neither the facts found nor the evidence before him warrant the finding that Kingman had or is chargeable with knowledge of the bankrupts' insolvent condition. He is not shown to have known of any instance of failure on their part to meet an obligation when due, either to him or to any one else, or to have known of any instance in which they had to borrow in order to meet their obligations. There was nothing more to put him on inquiry than the facts that they were engaged in a business of speculative character, and that their method of conducting it afforded indications of reckless management on their part. That he knew of no other property owned by them, except their interest in contracts similar to his own, cannot be regarded as indicating to him that they had no other property. He is not shown to have been in such relations with them as would call on him to draw from his ignorance of the existence of other property the conclusion that there was none.

As to their other contracts, he had no knowledge, so far as appears, whether they were profitable or the reverse. If his own contract showed a loss, it did not follow that the same was true of the others.

The immediate facts and circumstances of the transaction claimed to have effected the preference are thus found by the master:

"On the 11th day of April, 1904, Kingman had marginal contracts with the bankrupts to deliver stocks valued at $42,550 upon the payment of $34,525.85.

"At that time Kingman demanded that his marginal contracts with the bankrupts should be transferred to Corey, Milliken & Company, and in compliance with this demand the bankrupts paid Corey, Milliken & Company $4,917.36 in money, and Corey, Milliken & Company charged the bankrupts on their open account $3,024.15, and in consideration thereof assumed the Kingman account with the bankrupts. Corey, Milliken & Company within a year subsequently carried out their marginal contracts with the said Kingman and they were closed out at a profit."

Kingman's request that his account be transferred as above was complied with by the bankrupts without delay and without any serious protest or objection on their part, so far as appears. It may be assumed that he understood that the margin in their hands would be in some form transferred with the account, but there is nothing to show that he knew anything about the actual manner in which this was accomplished, whether by payment or by charges in account, or that he knew anything as to the proportion which the property transferred bore to their total property at the time. There was no payment whatever to him, he had not at the time taken such action as

would make any payment due. In parting with the property involved in his account, the bankrupts were, of course, relieved of all their obligations in connection with it.

I do not think it can properly be said that facts and circumstances with respect to the bankrupts' financial condition have been brought home to the defendant Kingman such as would put an ordinarily prudent business man upon inquiry as to their assets and liabilities before allowing the transfer of the account. If not, since he had no actual knowledge of their insolvent condition, he had not reasonable cause to believe that they intended to prefer him by the transfer.

The exceptions to the report must therefore be overruled, the report confirmed, and the bill dismissed.