In re JACOBSON.

(District Court, D. Massachusetts. May 27, 1909. On Petition for Rehearing, July 19, 1909.)

No. 14,047.

BANKRUPTCY (§ 74*)—INVOLUNTARY PROCEEDINGS—REDUCTION OF INDEBTEDNESS AFTER ACT OF BANKRUPTCY.

A debtor who owed more than $4,000 made a general assignment of his property, which was assented to by some of his creditors, and not by others. The assignment was an act of bankruptcy under Bankr. Act July 1, 1898, c. 541, § 3a (4), 30 Stat. 546 (U. S. Comp. St. 1901, p. 3422), as amended by Act Feb. 5, 1903, c. 487, § 2, 32 Stat. 797 (U. S. Comp. St. Supp. 1909, p. 1309), and entitled the nonassenting creditors, who held claims sufficient in number and amount, to file a petition in involuntary bankruptcy within four months, which they did. Subsequent to the assignment, but before the filing of such petition, the debtor made a settlement with the assenting creditors, and, on payment to them of a percentage of their claims, received releases discharging him and the assignee from any further liability which left his indebtedness to the remaining creditors at the time of the filing of the petition in bankruptcy less than $1,000. *Held*, that the provision of section 4b that "any natural person * * * owing debts to the amount of $1,000, or over may be adjudged an involuntary bankrupt," should probably be construed as having reference to the indebtedness at the time of the commission of the act of bankruptcy charged, but, in any event, it was not within the power of the debtor and the assenting creditors, by a transaction which on an adjudication could be avoided as a constructively fraudulent or preferential transfer of property, to deprive the nonassenting creditors of their accrued right to avail themselves of the act of bankruptcy committed.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 74.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In the matter of Abraham Jacobson, alleged bankrupt. On question of adjudication. Adjudication ordered.

Martin Witte, for petitioning creditors.
Lee M. Friedman, for the bankrupt.

DODGE, District Judge. The only objection to adjudication which the alleged bankrupt raises by his answer is that he does not owe $1,000, and is not therefore such a person as may be adjudged an involuntary bankrupt under section 4b of the bankruptcy act.

The petition was filed August 26, 1908; the answer on September 11, 1908. Upon a reference for ascertainment of facts and report, it was agreed before the referee that on June 1, 1908, the alleged bankrupt owed $4,462.61 to 32 creditors; that on that day he made an assignment for his creditors' benefit; that 24 creditors, having claims amounting in all to $3,544.11, assented to this assignment, leaving 8 creditors, with claims amounting in all to $898.50, who did not assent; that a settlement was thereafter agreed on between him and the assenting creditors, whereby each creditor agreed to take 25 per cent. of his claim in full settlement, and to discharge, transfer, or assign his claim as the assignee might determine, provided such payment should be made in cash "within thirty days from the acceptance of said offer by the creditors of said Jacobson"; that all of the 24 creditors who accepted the assignment had received 25 per cent. of their claims in cash before the petition was filed; and that each of these creditors had executed a release under seal in the following terms:

"We, the undersigned, hereby acknowledge the receipt of 25% of our respective claims against Abram Jacobson, and in consideration thereof we hereby assent to the assignment of said Jacobson to William Charak, dated June 1, 1908 as of its date, and we hereby discharge the said Jacobson and the said Charak from all further claims against either. Witness our hands and a common seal this tenth day of June, A. D. 1908. [Seal.]"

When the petition was filed, therefore, there were only eight creditors who had not released the alleged bankrupt, as above, from all liability to them. Their claims amounted in all, as has been stated, to only $898.50. Among them are the four petitioning creditors named in the petition. The only act of bankruptcy which the petition charges is the general assignment above mentioned.

Although the alleged bankrupt shows as above that, when the petition against him was filed, he owed creditors who had not released their claims less than $1,000 in all, he shows this only by showing at the same time that he has committed the act of bankruptcy charged, that he then owed more than $1,000, and that it was by means of the transfer of his property then made to his assignee that he obtained the releases upon which he now relies to prove that his indebtedness then outstanding has since been reduced to less than $1,000.

The language of section 4b applicable to the case is:

"Any natural person * * * owing debts to the amount of one thousand dollars or over, may be adjudged an involuntary bankrupt and shall be subject to the provisions and entitled to the benefits of this act."

"Debts" by the definition found in section 1 (11) includes any debt, demand, or claim provable in bankruptcy. There is no express provi-

sion that the required amount of debts owing is to be ascertained as of the time the involuntary petition is filed. Act March 2, 1867, c. 176, 14 Stat. 517, provided in section 11 (Rev. St. § 5014) that any person residing within the jurisdiction of the United States owing debts provable under the act exceeding the amount of $300 might be adjudged bankrupt upon his voluntary petition; and the same act provided in section 39 (Rev. St. § 5021) that "any person residing and owing debts as aforesaid" who should commit any of the acts of bankruptcy thereafter described in the same section should be adjudged bankrupt upon an involuntary petition against him. It would seem to be clear that according to those provisions the amount of debts owing was to be ascertained for the purposes of an involuntary petition as of the date of the act of bankruptcy charged; and upon principle so reasonable does this appear that I am much inclined to believe it to be what was really intended by section 4b of the present act. I find no necessity, however, for resting the determination of the question in this case solely upon any doubtful construction of the language there used. As against the petitioning creditors, and upon what appears in this case, I do not think the bankrupt can successfully deny that he was owing debts to the amount of more than $1,000 at the time the petition was filed.

The petitioning creditors have claims of more than $500 in total amount, and they are not debarred by any consent to the general assignment from treating it as an act of bankruptcy. They ask for an adjudication because of it, the immediate effect of which adjudication will be to avoid and annul it. Save for the objection above stated, they are entitled to accomplish that result. By insisting upon their rights here, they have distinctly repudiated the assignment and all benefits secured to them by its provisions. While it is not necessarily illegal or void for all purposes (see Re Chase, 124 Fed. 753, 59 C. C. A. 629; Randolph v. Scruggs, 190 U. S. 533, 537, 23 Sup. Ct. 710, 47 L. Ed. 1165), it is nevertheless possible to say, as is remarked in the opinion in the latter case, that constructively a general assignment falls under the description in section 67e of the bankruptcy act of conveyances made with the intent to hinder, delay, or defraud creditors. So far as this assignment or anything done under it may tend to deprive these creditors of any rights secured to them by the bankruptcy act, I think they are entitled to have it regarded as falling under that description. And, inasmuch as the effect of its enforcement will be to give creditors other than the petitioners—i. e., such creditors as have accepted or may accept it—a greater percentage of their debts than the petitioners, creditors of the same class, receive, it may also be regarded here, so far as their rights are concerned, as a preferential transfer of all the debtor's property. See National, etc., Bank v. Eagle Sugar Refinery, 109 Mass. 38, 40; Steel Edge, etc., Co. v. Manchester Bank, 163 Mass. 252, 254, 39 N. E. 1021. The petitioners are entitled in bankruptcy to a distribution of this property without regard either to the assignment or to any distribution under it by the assignee, and therefore to have every creditor who has received 25 per cent. of his claim from the assignee ordered to restore what he has received to the trustee in bankruptcy. Of these rights I do not believe they can be de-

prived by any dealings between the alleged bankrupt and his other creditors had after the assignment and based upon it.

If an act of bankruptcy has been committed, the relations between the bankrupt and any one of his creditors can no longer be regarded as relations which concern him and that creditor only. They have become involved with the rights of every other creditor. Thus an act of bankruptcy once committed cannot be condoned at the will of that creditor only who may be immediately concerned in it. Every creditor, whether a party to the transaction or not, is a creditor entitled to ask for adjudication by reason of it. Lowell, Bankruptcy, § 57, and cases there cited. And for similar reasons the question whether a given debt existing at the time of the act of bankruptcy is to be regarded as thereafter extinguished or not cannot be regarded as a question depending entirely upon what may have been subsequently agreed between the bankrupt and the creditor to whom that debt was owing. A debt even if paid in full within four months of an involuntary petition may be counted as a debt owing at the date of the petition, if the payment has been preferential or in fraud of creditors. The trustee in bankruptcy will have the right to recover such a payment back, and the debt will thereupon become a provable debt. Re Tirre (D. C.) 95 Fed. 425. So, also, as to a debt settled by acceptance in full settlement of a payment of the same character less in amount than the amount of the debt. Re McMurtrey et al. (D. C.) 142 Fed. 863.

The releases under seal which have been given do not in my opinion oblige me to hold that the debts released are extinguished for the purposes of this case, nor prevent me from regarding them as existing for those purposes according to the principles above stated. As between the alleged bankrupt and the releasing creditors, no doubt a sufficient consideration is to be presumed. But, as regards the petitioning creditors, entitled in bankruptcy as they are to defeat the consideration for every release, no such presumption is to be made.

The result will be that for the purposes of this petition I find the alleged bankrupt upon the evidence before the referee to have been liable to adjudication under section 4b when this petition was filed.

I have thus far assumed that there has been no deliberate attempt in what has been done under the general assignment to deprive non-assenting creditors entitled to resort to proceedings in bankruptcy of their rights under the act, nor any actual fraud practiced. It is obvious, however, that, if the release of a bankrupt's indebtedness subsequently to his act of bankruptcy, such as was made in this case, is allowed to have the effect of extinguishing so much of the indebtedness or rendering it nonexistent for the purposes of an involuntary petition, a way is opened for the possible intentional defeat of the rights of part of the bankrupt's creditors by collusion between him and the others. I agree with the referee in believing that the evidence raises a strong suspicion as to the good faith of some of the proceedings in connection with the sale of the bankrupt's property made under the assignment. It would at least appear to be true that the agreement to settle for 25 per cent. was subject to the condition that all the creditors should accept the same settlement, and that no payment to any of them

ought to have been made until that condition was fulfilled. But since the petitioners never accepted the assignment, and are in no way bound by it, nothing of this kind can be said to have affected their rights. Upon adjudication it will be the trustee's duty to investigate all the assignee's dealings with any of the bankrupt's property.

Adjudication ordered.

### On Petition for Rehearing.

Since the order of adjudication made in this case in pursuance of the opinion dated May 27, 1909, the alleged bankrupt has filed a petition for rehearing. Briefs have been submitted on both sides which are understood to contain all that either party will desire to submit in case a rehearing should be ordered, so that, if the bankrupt satisfies the court that the questions decided should be reargued before it, the case may be treated as already so reargued.

The petitioner urges that the question at issue is "a question of jurisdiction and that alone, "and this is true in the sense that unless the petitioners prove that when the petition was filed the alleged bankrupt was owing debts to the amount of $1,000 or over, within the meaning of section 4b of the bankruptcy act, the court cannot proceed to adjudge him bankrupt; but, of course, the court has full jurisdiction to hear and determine the question whether within the meaning of that section he was then owing debts to that amount or not.

It is said that the jurisdiction of the court depends upon the state of things existing at the time the petition was brought, and this also is true, it being understood that by the state of things then existing is meant the state of things existing as between the parties before the court and for the purposes of the issues raised between them. To ascertain the state of things thus existing, inquiry is not infrequently necessary, in cases like the present, where the commission of the act of bankruptcy charged is undisputed, into states of things existing before the filing of the petition. Thus, if the debtor belonged to a a nonexempt class when the act of bankruptcy was committed, he is to be adjudged bankrupt notwithstanding that he has come to belong to a class which the bankruptcy act exempts from adjudication before the petition is filed. Flickenger v. Bank, 145 Fed. 162, 76 C. C. A. 132. A state of things existing at the time of the filing of the petition may have been brought about by acts of the bankrupt, or by dealings between him and persons other than the petitioning creditors, to which the law attaches consequences very different, so far as the petitioning creditors are concerned, from those which follow when the bankrupt alone is concerned, or when he and persons other than the petitioning creditors are alone concerned. In such cases it is the state of things as between the bankrupt and the petitioning creditors with which the court deals. Thus a debtor is not to be heard to say as against petitioning creditors that he has ceased to do the business he was in when they trusted him, although he may as a matter of fact have discontinued it before the petition was filed. Tiffany v. La Plume Co. (D. C.) 141 Fed. 444. Nor is a corporation to be heard to say that it has ceased to be a corporation since its debts to the petitioning creditors were incurred. Re Adams & Hoyt Co. (D. C.) 164 Fed. 489. That

the death or insanity of a debtor subsequently to his commission of an act of bankruptcy renders it impossible to maintain a petition in bankruptcy against his estate is because the law has prescribed other methods for the administration of estates of decedents or insane persons, and affords no argument against the principles above adopted.

It is the transfer of property from the bankrupt to the assignee which has been regarded as preferential rather than the transfer of property from the assignee to the assenting creditors. If, as I have held, the assignment was wholly without effect as against nonassenting creditors, it makes no difference to them whether the assignee believed or not that he could as against nonassenting creditors accomplish a reduction of the bankrupt's indebtedness to a figure below $1,000.

To say that as soon as the debtor procured his creditors' assent to the assignment so that less than $1,000 of creditors were outstanding he was immune from bankruptcy proceedings for that cause, or that a situation was then created which made the assignment invulnerable, so far as bankruptcy on that ground was concerned, or that until avoided by bankruptcy the assignment was valid as to all creditors, assenting or nonassenting, seems to me merely to beg the question here to be decided.

If Leighton v. Kennedy, 129 Fed. 737, 64 C. C. A. 265, on which the debtor relies, holds that claims purchased by an assignee are extinguished, so that the bankrupt cannot count them as existing claims against his estate, it does not seem to me to follow that claims so purchased must be regarded as extinguished for all purposes as against creditors who have never accepted the assignment and seek an adjudication because of it.

Nothing that has been advanced on behalf of the alleged bankrupt since the opinion dated May 27, 1909, has seemed to me sufficient to require any change in the views therein expressed, and the petition for a rehearing must therefore be denied.