ALFRED C. WILSON *vs.* MITCHELL–WOODBURY COMPANY.

Suffolk.    December 3, 1912. — May 23, 1913.

Present: RUGG, C. J., HAMMOND, LORING, BRALEY, & DE COURCY, JJ.

*Bankruptcy,* Unlawful preference.    *Interest.*

In a suit in equity by a trustee in bankruptcy to recover the amount of an alleged unlawful preference, where it appeared that three notes of the bankrupt to the defendant matured at different times, a finding by a master that the payment by the bankrupt of the amount of one of these notes at its maturity when the bankrupt was insolvent was a payment of that note in full and thus enabled the defendant "to obtain a greater percentage of his debt than any other of such creditors of the same class," was held not to have been plainly wrong.

The question, whether under § 60 of the bankruptcy act of 1898 as amended by U. S. St. 1903, c. 487, § 13, an actual intent on the part of the debtor to prefer, as well as a reasonable cause on the part of the creditor to believe that a preference was intended, is necessary to constitute an unlawful preference, here was not passed upon, because in the present case the report of a master showed a transaction between the debtor and the creditor from which an intent to prefer the creditor was to be imputed to the debtor as matter of law.

Even if a creditor of a bankrupt who has received an unlawful preference has a right to surrender the whole of it *in specie* to the trustee in bankruptcy, instead of the trustee having the right to elect whether he will accept such a surrender, at any rate such unlawfully preferred creditor has no right to reduce the damages that may be recovered against him by a partial return of the property given him as a preference.

In a suit in equity by a trustee in bankruptcy to recover the amount of an unlawful preference, where there is no evidence that the plaintiff made any demand for the return of the property unlawfully transferred to the defendant, or for money damages in place of it, before bringing the suit, the plaintiff, if he prevails, is entitled to interest only from the date of the filing of the bill.

BILL IN EQUITY, filed in the Superior Court on August 24, 1909, by the trustee in bankruptcy of the Graves China Company, a corporation organized under the laws of the State of Missouri, against the Mitchell-Woodbury Company, a corporation organized under the laws of the State of Maine and having a place of business in Boston, to recover the amount of an alleged unlawful preference made by the bankrupt to the defendant by the transfer of certain merchandise.

The case was referred to Lee M. Friedman, Esquire, as master. The material facts found by him are stated or described in the opinion. Later the case was heard by *Hardy,* J., upon the exceptions of both parties to the master's report.

The first of the defendant's exceptions to the master's report was on the ground that the plaintiff had failed to prove that the defendant had received a greater proportion of his debt than ultimately would be received by the other creditors of the bankrupt. The defendant's remaining exceptions to the master's report, numbered 2, 3, 4 and 5, were based on the ground that the plaintiff had failed to prove an unlawful preference under the provisions of the bankruptcy act relating to the intent and knowledge of the parties.

The judge made an interlocutory decree overruling the exceptions of both parties and confirming the report. The judge made also a final decree in two paragraphs, the first paragraph ordering that the defendant should pay the plaintiff the sum of $2,884.50 and interest thereon at the rate of six per cent per annum from the date of the filing of the bill, with taxable costs amounting to $211.24, and the second paragraph ordering that, upon the delivery by the defendant to the plaintiff, within thirty days after the entry of the final decree, of the part of the merchandise described in the bill which the defendant had on hand at the time of the filing of the bill, the defendant was to be allowed $1,369.50 as a partial payment on the amount ordered to be paid to the plaintiff in the preceding paragraph of the decree. Both the defendant and the plaintiff appealed.

*G. P. Wardner,* (*C. H. Walker* with him,) for the defendant.

*A. M. Lyman,* for the plaintiff.

RUGG, C. J.   This is a bill in equity brought by the trustee in bankruptcy of the Graves China Company, a Missouri corpo-

ration, to recover for alleged unlawful preferences under the national bankruptcy act. The case comes to this court on appeals by both the plaintiff and the defendant from a final decree.

1. The first question is whether the effect of the transfer was to enable the defendant as a creditor "to obtain a greater percentage of his debt than any other of such creditors of the same class" would obtain under the definition of preference given in § 60 of the bankruptcy act. (U. S. St. July 1, 1898, c. 541, as amended by U. S. St. 1903, c. 487, § 13.) The finding of the master makes it plain that a larger percentage of the defendant's claim would be paid out of the property of the bankrupt if the conveyance is permitted to stand than the other creditors would get. His finding was that one of three notes held by the defendant was paid in full. It cannot be said that this finding was plainly wrong, nor that, on the question of preference, the several notes maturing at different times constituted a single debt.

2. The next question is whether there was a preference under the bankruptcy act arising from the intent of parties. The facts as found by the master are that on February 12, 1908, the Graves China Company was adjudicated a bankrupt. At that time it was hopelessly insolvent, the actual value of its assets being not in excess of $6,000, and its liabilities approximately $60,000. Before December, 1907, the bankrupt owed the defendant on three promissory notes, each for $2,500 for borrowed money, and more than $1,600 on other indebtedness. In December, 1907, the president and general manager of the bankrupt came to Boston, and, in consequence of a conference with Mr. Woodbury representing the defendant, at or about that time goods of nearly $3,500 in value were shipped to one Cochran for the defendant, which took up one $2,500 note, the balance being credited on account. The master finds "that this transaction was put through by Mr. Woodbury for the purpose of obtaining a preference at a time when, although he did not have actual knowledge, yet he believed, and had reasonable cause to believe, that the Graves China Company was insolvent and would not be able to pay its creditors in full. That at the time, while Graves may not have realized the insolvent condition of his company, and had clearly in mind, and actually in fact intended, a preference, he knew that he was giving the defendant an advantage over other

creditors and actually discussed the desirability of keeping the shipment of the goods to Cochran secret. . . . He was in no position to oppose any suggestions of the defendant and readily yielded to their proposition as a hope to continue business and work out some plan of reorganization. I find that the defendant had reasonable cause to know of this state of mind of the bankrupt. . . . It is true that it cannot be said that an actual intent to give a preference existed as such in Graves' mind; yet the facts which do exist here are plainly what 'the law regards as the equivalent thereof.' "

It is not necessary to decide whether under § 60 of the bankruptcy act an actual intent on the part of the debtor to prefer, as well as reasonable cause to believe that a preference was intended on the part of the creditor, is necessary to constitute a preference, as was held in *Hardy* v. *Gray,* 75 C. C. A. 562, and by other decisions of Circuit Courts of Appeal, *First National Bank of Louisville* v. *Holt,* 84 C. C. A. 16, *Curtiss* v. *Kingman,* 87 C. C. A. 60, *Tumlin* v. *Bryan,* 91 C. C. A. 200, 202, *Kimmerle* v. *Farr,* 111 C. C. A. 27, In re *Klein,* 116 C. C. A. 603, 612, or whether the intent of the debtor is immaterial, as was held in *Benedict* v. *Deshel,* 177 N. Y. 1, *Parker* v. *Black,* 143 Fed. Rep. 560, affirmed on opinion below in 80 C. C. A. 484, *Gabriel* v. *Tonner,* 138 Cal. 63, and *Alexander* v. *Redmond,* 103 C. C. A. 446, 449, following strong intimations to that effect in *Wilson* v. *Nelson,* 183 U. S. 191, at 196, and *Pirie* v. *Chicago Title & Trust Co.* 182 U. S. 438, at 446, because it appears from the report of the master that, whichever of those views be sound, the provisions of § 60 were violated, and a preference was created from the conduct of the bankrupt and the defendant in December, 1907, which we have outlined. It was said in *Western Tie & Timber Co.* v. *Brown,* 196 U. S. 502, at 508: "If the inevitable result of the transaction would have been to create such a preference, then the law would conclusively impute to . . . [the debtor] . . . the intention to bring about the result necessarily arising from the nature of the act which he did." To the same effect are *Kimmerle* v. *Farr,* 111 C. C. A. 27, 32, *First National Bank of Philadelphia* v. *Abbott,* 91 C. C. A. 538, 545, and our own decisions, *Atherton* v. *Emerson,* 199 Mass. 199, 211, *Brown* v. *Pelonsky,* 210 Mass. 502, 505. Categorical affirmative evidence of intent to prefer is difficult to obtain.

Where the position of the officer of the bankrupt corporation, through whom it is alleged that the preference was made, was such that it was his duty to know the bankrupt's financial condition, and where his conduct indicates a thorough knowledge of its embarrassment and general business conditions, and where a conveyance of property is made to a creditor not in the ordinary course of business, but under extraordinary conditions which render imperative the result that other creditors shall be hindered, delayed or prevented in the payment of their claims, the inference of an intent on the part of the debtor to prefer becomes inevitable. The inference follows as matter of law from circumstances of overwhelming probative force, even though the buoyant hopefulness of the particular individual may be so great as to prevent him from having a settled and clear-cut purpose to prefer one creditor over others. This principle seems to have been recognized in *Hardy* v. *Gray,* 75 C. C. A. 562, at 567, where it was said that the creditor could not have reason to believe that a preference was intended "unless, in fact, a preference was actually intended on the part of the debtor, or unless there existed what the law regards as the equivalent thereof." The equivalent of actual intent on the part of the debtor to make a preference, which, according to the view of the court in *Hardy* v. *Gray,* is required by the bankruptcy act, seems susceptible only of the meaning that circumstances may exist which render proof of a positive and deliberate design to prefer immaterial or unnecessary. However that may be, the language quoted from *Western Tie & Timber Co.* v. *Brown, supra,* seems to us decisive, and, being used by the court of last resort as to the meaning of the bankruptcy act, must be accepted as final. In the light of this principle, it is firmly established under the findings of the master that a preference existed under the bankruptcy act. The defendant's exceptions 2, 3, 4, and 5 must be overruled. The events here in controversy occurred before the enactment of U. S. St. of 1910, c. 412, § 11, which expressly makes immaterial the intent of the bankrupt. See *Hewitt* v. *Boston Straw Board Co., ante,* 260.

3. The master erred in ruling that the defendant had a right to surrender a part of the property obtained by the preference, and might absolve itself to the extent of the part returned from liability to the trustee of the bankrupt in this suit. Whatever

may be the rule where the preferred creditor offers to surrender *in specie* his entire preference, we are of opinion that he is not permitted to surrender a part in partial reduction of the damages sustained by the estate of the bankrupt. There is strong ground for the argument that the right of election rests with the trustee in bankruptcy to determine whether or not he will accept a return of all the property transferred as a preference or demand damages. Collier on Bankruptcy, (9th ed.) 827. This is the rule which exists in actions of trover. *Gibbs* v. *Chase,* 10 Mass. 125. *Greenfield Bank* v. *Leavitt,* 17 Pick. 1. *Livermore* v. *Northrup,* 44 N. Y. 107. *Keppel* v. *Tiffin Savings Bank,* 197 U. S. 356, affords no support for the proposition that a preferred creditor may reduce his damages by a partial return of the property given him as a preference.

4. Interest should be allowed from the date of the filing of the bill. There is no evidence that there was any demand by the trustee for the return of the goods or money damages in place thereof before the bringing of the bill. A preference was valid at common law, and is not rendered tortious by the bankruptcy act, nor is it penalized in any other way than is expressly pointed out in that act. Under these circumstances the general rule that interest is allowable only from date of the demand or institution of the suit should prevail. *Soule* v. *Soule,* 157 Mass. 451. *Kaufman* v. *Tredway,* 195 U. S. 271. *Alsop* v. *Conway,* 110 C. C. A. 366, 377; 188 Fed. Rep. 568, 579.

The result is that the only error disclosed relates to the second paragraph of the final decree authorizing the defendant to diminish damages by a partial return of the merchandise received in preference. The decree is reversed for the purpose of striking out this paragraph of the decree, and when so amended should be affirmed.

*So ordered.*