### In re BOSTON-WEST AFRICA TRADING CO.

(District Court, D. Massachusetts. March 4, 1919.)

No. 26089.

1. BANKRUPTCY &#8753;74—INVOLUNTARY BANKRUPTCY—INDEBTEDNESS.

In computing indebtedness of one against whom an involuntary petition was filed, claims paid by preferential transfers, which amounted to acts of bankruptcy, are to be counted.

2. BANKRUPTCY &#8753;166(5)—PREFERENTIAL TRANSFERS—WHAT CONSTITUTES.

Where the treasurer of a corporation, who had supplied practically all of its capital, and who had been led to believe that a claim against the corporation was unfounded, though other corporate officers knew it was well founded, paid over to himself on his own claims practically all of the corporate assets, held, that such payment was preferential, for the corporation was charged with knowledge of all of its officers.

3. BANKRUPTCY &#8753;166(5)—CORPORATIONS—OFFICERS—KNOWLEDGE.

If a corporation has creditors, to the knowledge of any of its officials or agents, by whose knowledge it would in ordinary business affairs be bound, it is held to that knowledge, and is presumed to act in the light of that knowledge, when it makes a payment to another creditor, which would be preferential if other creditors exist.

---

&#8753;For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Bankruptcy. In the matter of the Boston-West Africa Trading Company, alleged bankrupt. On review of the referee's report in favor of an adjudication in involuntary bankruptcy. Report confirmed, and adjudication ordered.

Putnam, Putnam & Bell, Louis G. De Rochemont, and Jacobs & Jacobs, all of Boston, Mass., for petitioning creditors.

Swift, Friedman & Atherton, of Boston, Mass., for alleged bankrupt.

MORTON, District Judge. The question is whether the respondent should be adjudicated on an involuntary petition.

The facts are as stated in the referee's report. The only points which require discussion are: (1) Whether the respondent owed debts to the amount of $1,000 at the time when the petition was filed; and (2) whether the payment to Argous was an act of bankruptcy. The complete facts are rather complicated, and only such of them will be referred to as are necessary to the discussion of the questions stated.

[1] As to (1), whether the debts amounted to $1,000: There were less than 12 creditors, and for present purposes the petition may be regarded as if brought by only one, viz. the Quaker City Morocco Company. Its claim, as stated by the referee, amounted to less than $1,000. The only other indebtedness of the respondent, which is here established, is that to Argous, on which the payment was made which is alleged in the petition as the act of bankruptcy. The contention for the respondent is that the payment extinguished the debt, and that therefore there was less than the amount of indebtedness required in bankruptcy proceedings. It has, however, been decided in this district, and upon what seem to me sound grounds, that in computing total indebtedness claims paid by preferential transfers, which are found to have been acts of bankruptcy, are to be counted.

"A debt, even if paid in full within four months of an involuntary petition, may be counted as a debt owing at the date of the petition, if the payment has been preferential or in fraud of creditors." Dodge, J., In re Jacobson (D. C.) 24 Am. Bankr. Rep. 927, 931, 181 Fed. 870, 873.

There is no question that the debt to Argous, if counted, was more than enough to make up $1,000. It follows that the petitioner established a sufficient indebtedness.

[2, 3] As to (2), whether the payment to Argous was a preference or fraudulent conveyance: Argous had supplied practically all the capital to the respondent, and was the person most heavily interested in it. It had shipped hides in the course of its business from Africa to this country and had been paid for them. It owed no indebtedness, except to Argous, and the claims by the petitioner, who had bought hides of it, for overcharges and inferior quality; the alleged claim of the Bank of British West Africa is not considered in the present controversy.

On December 5, 1917, at Boston, Argous, as treasurer, paid himself about $12,000 from the respondent's funds, on a claim of like amount which he held against the respondent. At the same time he transferred

to himself all the rest of the cash belonging to the respondent, about $6,500, and gave the respondent his personal note therefor. The statement of the transaction sounds fraudulent, but the learned referee did not so regard it. Argous was, as stated, practically the only person interested in the company; he was evidently somewhat dissatisfied with the way its affairs were being handled; its active business was being reduced or given up; and he apparently took over its cash for his own protection. At that time, although he knew of the claim by the Morocco Company against it, he had been advised that the claim was unfounded, and he did not have in mind to gain any advantage over the Morocco Company by transfers to himself. Schroeter, who was president of the company, and whose place of business was in New York, had been notified of the claim, and regarded it as better founded than did Henkel, who advised Argous about the matter.

The cash transferred to Argous constituted the entire substantial assets of the respondent. A few hundred dollars was left, but not sufficient to pay the petitioner's claim. If the respondent is to be held to the combined knowledge of Schroeter and Argous, it knew that the transfer to Argous would tend to hinder, delay, and defraud its other creditors. Such inevitably would be the effect of any conveyance by a debtor of all its property without arranging to pay its debts. Wilson v. Mitchell-Woodbury Co., 214 Mass. 514, 102 N. E. 119. The respondent is a corporation. The alleged act of bankruptcy was the act of the corporation. I do not think that it can be heard to say that, although Schroeter knew of the claims, he did not know of the transfer, and that Argous, although he knew of the transfer, did not believe the claims to be well founded, and that therefore no act of bankruptcy was committed, because no intent to prefer existed in any person's mind. If a corporation has creditors to the knowledge of any of its officials or agents, by whose knowledge it would in ordinary business affairs be bound, it is held to that knowledge, and is presumed to act in the light of it, in matters of this sort. Cohen, Trustee, v. Tremont Trust Co. (D. C. Dec. 11, 1918) 256 Fed. 399.

Report confirmed.

Adjudication ordered.