## BOSTON WEST AFRICA TRADING CO. v. QUAKER CITY MOROCCO CO.

(Circuit Court of Appeals, First Circuit. November 18, 1919.)

No. 1413.

1. BANKRUPTCY ⬥74—COMPUTATION OF INDEBTEDNESS IN DETERMINING JURISDICTION.

In computing the indebtedness of an alleged bankrupt for jurisdictional purposes, claims paid by preferential or fraudulent transfers are to be included.

2. BANKRUPTCY ⬥159, 175—FRAUDULENT TRANSFER OF PROPERTY AN ACT OF BANKRUPTCY.

Where the owner of all the stock of a trading corporation, when it was indebted and within four months prior to the filing of a petition in bankruptcy against it, transferred the greater part of its bank deposit, which constituted practically its sole assets, to himself in payment of alleged claims, leaving insufficient to pay other claims, such transaction constituted, not only a preference, but a transfer with intent to hinder, delay, and defraud creditors.

Appeal from the District Court of the United States for the District of Massachusetts; James M. Morton, Judge.

In the matter of the Boston West Africa Trading Company bankrupt. From order of adjudication, made on petition of the Quaker City Morocco Company, the bankrupt appeals. Affirmed.

For opinion below, see 255 Fed. 924.

Lee M. Friedman, of Boston, Mass. (Friedman & Atherton, of Boston, Mass., on the brief), for appellant.

Joseph B. Jacobs, of Boston, Mass. (Louis L. G. De Rochemont and Arthur J. Santry, both of Boston, Mass., on the brief), for appellee.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. This is an appeal from the District Court for the District of Massachusetts adjudicating the appellant an involuntary bankrupt. As stated in the opinion of the District Court:

"The only points which require discussion are: (1) Whether the respondent [now appellant] owed debts to the amount of $1,000 at the time when the petition was filed; and (2) whether the payment to Argous was an act of bankruptcy."

---

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

[1] The appellant's counsel has addressed to us an elaborate argument, asking us to overturn the established practice of nearly 20 years —that in computing the total indebtedness in order to determine whether the alleged bankrupt owes debts amounting to not less than $1,000, claims paid by preferential or fraudulent transfers shall be counted. It would require extraordinary reasons to justify us at this late day in attempting to change what has so long been regarded as the accepted interpretation of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 544 [Comp. St. §§ 9585–9656]).

We are not at all impressed with the soundness of the contention. If sustained, it would open a wide door to fraud. We regard it as inconsistent with the general principles of equality which underlie the whole Bankruptcy Act. The question was carefully considered by Judge Dodge in the Massachusetts District Court in the case of In re Jacobson (D. C.) 181 Fed. 870. We are satified with that decision and with the reasoning upon which it is based. See, also, 7 Corpus Juris, 67, 68, § 96; In re Norcross, 1 Am. Bankr. Rep. 644; In re Cain, 2 Am. Bankr. Rep. 379; In re Tirre (D. C.) 95 Fed. 425; In re Mc-Murtrey (D. C.) 142 Fed. 853.

[2] The other question is whether a payment made to one Argous was a preference, or a fraudulent conveyance, or both.

Argous had caused the appellant to be organized, and seems to have furnished or owned its entire capital stock. After a period of apparently not very successful trade in West Africa, Argous decided to liquidate the corporation, against which he had certain claims.

On December 5, 1917, Argous transferred to himself $19,000 out of the corporation's total bank deposit of $19,617.57, substantially the entire assets of this corporation. $12,492.49 he applied as payment of certain advances made by him to meet his guaranties for the corporation. The balance, $6,507.51, he at first treated as a loan to himself, for which he gave the company a demand note. Subsequently this sum of $6,507.51 was applied by himself to the payment of claims made by him against the corporation, excepting only the sum of $29.80, for which a new demand note was given, which continued to be held by the company at the time of the filing of the petition. This transfer was clearly made by Argous to himself for the purpose of enabling him to deal, practically on his own terms, with the claim made against the corporation by the Quaker City Morocco Company, which claim Argous appears to have regarded as unfair, perhaps invalid. This claim was the subject of conversation between one Henkel—who had been the appellant's representative engaged in buying skins in Africa—and Argous in Boston on December 3, 1917. It also appeared that one Schroeter, who was the president of the appellant and a New York broker engaged in the sale of hides and skins, had expressed the opinion, communicated to Argous, that the claim of the Quaker City Morocco Company was valid. This opinion of Schroeter, Argous resented. Under date of December 7, 1917, he writes from Boston to the "Boston West Africa Trading Company New York," a letter really intended for Schroeter and Henkel. In this he states:

"I have your letter of the 6th inst., with reference to claims, and would say that I will not pay any of them at the present time. In the first place, I will not permit any one to handle my money in such a reckless manner, without even consulting me in the matter. I have something to say where my money goes to, and I will not allow Mr. Henkel or Mr. Schroeter to distribute my funds for me in such a manner. * * *

"With reference to the claims, I understand that Mr. Schroeter put in the contract to the Quaker City conditions which he was not authorized to put there, but which he did on his own account in order to make the sale. This information was given me by Mr. Henkel. Since such is the case, it seems to me that claims which have been made, because of the contract being written without any such authority, should be borne by the one who is responsible for them. I told Mr. Henkel that the Boston West Africa Trading Company would naturally have to stand for its obligations to the extent of its capitalization. I do not want any one to imagine that I am an easy mark, and all you have to do is to render claims and have me pay them. You will have to prove everything before you get any more money out of me."

In this letter Argous refers to the corporation's money as "my money." He apparently regarded his ownership of the entire capital stock of the company, and his right to press his claims against the company, as warranting him in appropriating to himself everything that the corporation had, leaving other claimants to meet, not only objections to their claims, but absence of assets to satisfy their claims, if they should sustain them in the courts. Clearly Argous had no such legal right. He could not be the judge in his own case. His transfer to himself was not only a preference; it was a conveyance made with intent to hinder, delay, and defraud the other creditors of the corporation. This intent is a necessary legal inference when a debtor transfers all its property without arranging to pay its debts. Wilson v. Mitchell-Woodbury Co., 214 Mass. 514, 102 N. E. 119; Matthews v. Thompson, 186 Mass. 14, 71 N. E. 93, 66 L. R. A. 421, 104 Am. St. Rep. 550.

The decree of the District Court is affirmed, with costs.