### GOULD v. NATHANS et al.

(District Court, D. Massachusetts. Jan. 14, 1924.)

No. 1798.

1. **Bankruptcy ⚖=184(1)—Transaction held to constitute valid pledge, not subject to attack by pledgor's trustee in bankruptcy.**

Where corporation, as security for loan, assigned certain beds in storeroom, of which assignee was given key, and beds were delivered only with assignee's consent, she had a valid pledge of the beds as security for her loan, and her sale of them after filing of petition in bankruptcy cannot be attacked by corporation's trustee in bankruptcy.

2. **Bankruptcy ⚖=166(3)—Trustee held entitled to accounts receivable and proceeds assigned to creditor pursuant to prior agreement.**

Where corporation agreed to assign accounts receivable as security for loan, but they were not delivered to creditor until shortly before bankruptcy, when she knew that the company was insolvent, corporation's trustee in bankruptcy was entitled to accounts and the proceeds, though delivered to creditor pursuant to prior agreement to assign them.

3. **Bankruptcy ⚖=168—Rule as to allowance of interest on preferential payment stated.**

Interest on preferential payment recovered by trustee will ordinarily be allowed only from date of demand, but in case of fraud should be allowed from date of receipt of money.

In Equity. Bill by Alexander G. Gould, trustee, against Mary Nathans and others. Decree for complainant.

Thomas M. Vinson, of Boston, Mass., for plaintiff.

Bernard Ginsburg, of Boston, Mass., for defendants.

LOWELL, District Judge. This is a bill in equity, brought by the trustee in bankruptcy of the New England Metallic Bed Company, praying for a decree that a certain agreement between the bankrupt and the defendants be held to be an agreement for partnership. The bill also prays for an accounting. The material facts are as follows:

On August 24, 1921, the bankrupt and the defendants entered into an agreement of an ambiguous character, which might be considered either to be an attempt at a partnership arrangement or an instrument relating to a loan of money. In the view which the court takes of the transaction it is not necessary to describe in detail the agreement. Its salient features were that Mary Nathans was to pay $3,000 and that the defendant was to issue 30 shares of stock to Isaac Nathans. Mary Nathans paid the money, and afterward made a further payment of $1,000. As security for the money, the company assigned to her 50 beds in a storeroom and $10,000 of capital stock, on which she was to have no voting rights. A further arrangement was made, and it is this feature of the agreement which presents the important question in the case, that all the accounts receivable were to be assigned to Mary Nathans, but that the company was to collect them, and she was not to inform any creditor of the assignment.

The key to the storeroom containing the beds was given to Mary Nathans, and she kept possession of it, allowing the company to deliver beds only with her consent.

Mary Nathans allowed the company to collect the accounts receivable till the spring of 1922, when, about the middle of April, she got one Raisberg, one of the officers of the corporation, to collect the accounts for her. He did so, and paid her $3,141.22. There was evidence that at that time she knew that the corporation was in trouble. There was also evidence that the company was insolvent at that time. The petition in bankruptcy was filed on May 19, 1922. After this the beds were sold by Mary Nathans, and she received the proceeds of the sale. There was some evidence of irregularity in the sale, but in the view I take of the transaction this is immaterial.

[1] I find on the facts that Mary Nathans took a valid pledge of the beds as security for her loan, and that the sale of them cannot be attacked by the trustee in bankruptcy. Casey v. Cavaroc, 96 U. S. 467, 24 L. Ed. 779; Dunn v. Train, 125 Fed. 221, 60 C. C. A. 113.

[2] The situation with regard to the accounts receivable is different. They were never delivered to her, or any one representing her, till a short time before bankruptcy, when she knew that the company was insolvent. I rule that on these facts the trustee in bankruptcy has a better title to the accounts receivable and their proceeds than the defendant Mary Nathans. It makes no difference that they were delivered in consequence of a prior agreement to assign them. In re Great Western Mfg. Co. (C. C. A. 8th Cir.) 18 Am. Bankr. Rep. 259, 152 Fed. 123, 81 C. C. A. 341.

The trustee asks leave to amend the bill of complaint. The leave is granted, and, on the bill being amended to set forth a voidable preference, a decree may be entered that Mary Nathans pay to the trustee the sum of $3,141.52.

[3] As to the interest, the law on the subject seems to be somewhat in doubt. 5 Remington, Bankruptcy (3d Ed.) § 2310. In an ordinary case I think that the rule adopted by the Supreme Judicial Court of Massachusetts is the proper one. In the case of Wilson v. Mitchell-Woodbury Co., 214 Mass. 514, 102 N. E. 119, the court held that interest is allowable only from the date of the demand. But in the case at bar there was evidence of fraud, and I rule that interest should be allowed from the date of the receipt of the money.

I deny all the defendants' requests for rulings, except so far as they are covered by the above opinion.