**In re FOUR SEASONS SPORTING GOODS, INC., a California corporation, Debtor.**

**Stephen C. BECKER, Trustee, Plaintiff,**

**v.**

**SECURITY NATIONAL BANK, a federally chartered bank, et al., Defendants.**

**Bankruptcy No. 4–80–01301WB.**
**Adv. No. 4–83–1460 AH.**

United States Bankruptcy Court,
N.D. California.

Jan. 23, 1985.

Stephen C. Becker, Millbrae, Cal., for plaintiff.

Tobin & Tobin, Paul E. Gaspari, San Francisco, Cal., for defendants.

## MEMORANDUM OPINION

ELIZABETH L. PERRIS, Bankruptcy Judge.

This matter comes before the Court on a Motion filed by Stephen C. Becker, Trustee in bankruptcy of the estate of Four Seasons Sporting Goods, Inc. ("Debtor"), for

an Order Fixing Prejudgment and Post-judgment Interest.

The Court has granted Trustee's Motion for Summary Judgment in this action, allowing him to recover a preferential transfer in the amount of $146,500 from Security National Bank, the predecessor in interest to the Hibernia Bank ("Bank"). The Summary Judgment Order provided for lawful interest accruing on the principal amounts from such dates as the Court determined or the parties agree. While the Trustee and the Bank stipulated that the Trustee is entitled to postjudgment interest at the rate of 10% per annum and that prejudgment interest should be calculated at the rate of 7% per annum, they did not reach agreement on the date of which prejudgment interest began to run. Accordingly, the issue raised by Trustee's Motion is when the prejudgment interest began accruing.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 2, 1980, an involuntary petition for relief under Chapter 7 of the Bankruptcy Code was filed against the Debtor, and the proceeding initiated thereby ("the bankruptcy proceeding") was converted on July 11, 1980 to one under Chapter 11 of the Bankruptcy Code. At all times pertinent to the bankruptcy proceedings, Edward W. Easton or Anne P. Easton ("the Eastons"), or both of them, controlled the Debtor.

On October 23, 1980, the Bank filed a complaint against the Debtor and the Debtor-in-Possession [No. 4–80–0560AH ("Chapter 11 Adversary Proceeding")]. The Bank sought a declaratory judgment that $146,500 in payments ("the payments"), made by the Debtor to the Bank within ninety (90) days prior to the filing of the involuntary petition did not constitute a voidable preference under Sec. 547 of the Bankruptcy Code (11 U.S.C.). The Debtor and Debtor-in-Possession filed an Answer in the Chapter 11 adversary proceeding in which they asserted, among other things, that the payments were not preferential.

On February 6, 1981, the Official Committee of Creditors ("the Creditors' Committee") filed a Motion for Leave to Intervene and a Complaint in Intervention in the Chapter 11 adversary proceeding in which it prayed, among other things, that the payments be determined to have been preferential and that the sum of money which represented the payments be determined to be available for distribution as a dividend to creditors in the bankruptcy proceeding. On March 11, 1981, the Court granted the Creditors' Committee leave to intervene in the Chapter 11 adversary proceeding.

In April, 1981, the Eastons were joined as defendants in the Chapter 11 adversary proceeding as a result of a Motion to Compel Joinder filed by the Bank.

A dispute between the Eastons and the Creditors' Committee arose in April, 1983 as to whether the Creditors' Committee was seeking not only a declaratory judgment that the payments were preferential, but also an Order directing that the Bank surrender the payment to either the Debtor-in-Possession or the Creditors' Committee. The Creditors' Committee maintained that both issues had been framed in a timely manner, whereas the Eastons maintained that only the request for declaratory judgment had been framed in a timely manner. Both the Eastons and the Creditors' Committee set forth their respective views in a series of letters which they addressed to the Court during April, 1983.

On July 1, 1983, the Court entered an Order in the Chapter 11 adversary proceeding which provided that the payments constituted a voidable preference. For reasons which the Court did not articulate, the Court did not enter judgment against the Bank for the $146,500 preference.

The Court converted the Chapter 11 proceeding to a Chapter 7 proceeding on August 9, 1983. Stephen C. Becker ("Trustee") was appointed Trustee. On September 27, 1983, the Trustee filed this adversary proceeding. The Trustee sought judgment against the Bank for the $146,500 which the Court had earlier determined in the Chapter 11 proceeding to have been a

preference. As discussed earlier, the Court granted the Trustee summary judgment against the Bank in the principal amount of $146,500 on November 28, 1983. The Summary Judgment Order provided that interest on the principal amount shall accrue from such date as the Court may prescribe, or the parties to the Chapter 7 and the adversary proceedings may otherwise agree.

## SUMMARY OF THE PARTIES' ARGUMENTS

The Bank, the Eastons, and the Trustee, have to date been unable to agree as to the date on which prejudgment interest shall begin to accrue on the principal sum of $146,500.

The Bank argues that interest should begin to accrue as of September 27, 1983, the date on which the complaint was filed which initiated the Chapter 7 adversary proceeding. The Bank contends that the effect of the Court's decision in the Chapter 11 adversary proceeding to deny turnover of the payments raises an inference that the pleadings in the declaratory relief action, and in the cross-complaint brought by the Creditors' Committee related only to the existence of the preference and not to a demand for the turn-over of the money. Absent such a demand, interest should not accrue until the date the Trustee filed his complaint to compel turn-over of the payments.

The Trustee maintains that the interest accrual commencement date should be February 6, 1981, the date on which the Creditors' Committee filed its Complaint in Intervention in the Chapter 11 adversary proceeding. The Trustee argues that, although the relief sought by the Creditors' Committee in the Chapter 11 adversary proceeding was framed as a prayer for declaratory judgment, it was clear that the Creditors' Committee sought a recovery of the moneys which had been conveyed to the Bank by the Debtor.

## ISSUE PRESENTED

The only issue before the Court is whether it should set the date from which prejudgment interest should commence as:

1. February 6, 1981, the date on which the Creditors' Committee filed its Complaint in Intervention, or

2. September 27, 1983, the date on which the Trustee filed his Complaint seeking judgment against the Bank.

## DISCUSSION

The law regarding the awarding of prejudgment interest in an action to set aside a preferential transfer has been summarized as follows:

"It is well settled that in an action to set aside a preference the trustee is entitled to prejudgment interest from the date of demand for its return, or, in the absence of a prior demand, from the date of commencement of the adversary proceeding. [Citations omitted].

The allowance of interest from the date demand is made or a proceeding instituted, rather than the date of the transfer, is based on the idea that until such time the preferred creditor cannot be said to hold the property wrongfully. See *Utah Association of Credit Men v. Boyle Furniture Co.*, 43 Utah 523, 136 P. 572, 576 (1913). A transaction which results in a voidable preference is lawful when made but subject to the possibility of being defeated by subsequent events. It continues to be lawful unless it is followed by the filing of a bankruptcy petition within 90 days. It continues to be lawful after that time unless the trustee elects to avoid it. Until the trustee exercises his election and makes demand for the transfer, the creditor's possession of the property is proper." *In re Independent Clearing House Co.*, 41 B.R. 985, 1015 (Bankr.Utah 1984).

■ The authority of the Court to award prejudgment interest is based upon the Court's equitable power rather than specific statutory authority. *In re Roco Corp.*, 37 B.R. 770, 774 (Bankr.R.I.1984). Because of the equitable underpinnings of the rules, Courts have found that they have the au-

thority to extend the period when prejudgment interest accrues. For instance, Courts have on occasion awarded interest from the date of the transfer where blatant fraud or bad faith in connection with the transfer was demonstrated. See *In re Wholesale Furniture Mart, Inc.*, 24 B.R. 240 (Bankr.W.D.Mo.1982); *Gould v. Nathans*, 1 F.2d 458 (D.Mass.1924).

 Applying the legal principles set forth above to the facts in this case, the Court holds that prejudgment interest should commence on February 6, 1981. The filing of the Complaint in Intervention put the Bank on notice that the Creditors' Committee claimed that the $146,500 in payments were preferential and thus voidable. A Creditors' Committee has standing to avoid a preferential transfer if the Debtor-in-Possession fails to do so. *In re Monsour Medical Center*, 5 B.R. 715 (Bankr.W. D.Pa.1980). If the Creditors' Committee prevailed in the Chapter 11 adversary proceeding, there could be no question that the payments could be recovered. Thus, the filing of the Complaint in Intervention constituted an election by a party with standing to avoid the preferential transfer to the Bank.

The Plaintiff should submit an appropriate Judgment Order.