In re E.D. PRESLEY CORP., LTD., Debtor(s).

Daniel BAKST, Trustee, Plaintiff,

v.

Ellsworth D. PRESLEY, a/k/a E.D. Presley, Defendant.

Bankruptcy No. 82–01900–BKC–TCB. Adv. No. 84–0417–BKC–TCB–A.

United States Bankruptcy Court, S.D. Florida.

Nov. 21, 1984.

W. John Gundlach, Fort Lauderdale, Fla., for plaintiff/trustee.

Gary Zwickel, Lake Worth, Fla., for defendant.

## MEMORANDUM DECISION

THOMAS C. BRITTON, Bankruptcy Judge.

The plaintiff bankruptcy trustee seeks avoidance under 11 U.S.C. § 548(a)(2)(A) and (B)(ii) of the transfer of $250,000 on October 2, 1981 from the debtor to the defendant. The defendant moved for dismissal (C.P. No. 7) of the second count of the trustee's amended complaint (C.P. No. 4) and also answered (C.P. No. 6a). The motion was deferred to trial (C.P. No. 8) and the matter was tried on November 2.

Section 548(a)(2)(A) and (B)(ii) creates a statutory fraudulent transfer and requires that the plaintiff prove (1) the transfer to defendant of "an interest of the debtor", (2) within a year before bankruptcy, (3) for less than "a reasonably equivalent value", (4) while the debtor was engaged in business:

"for which any property remaining with the debtor was an unreasonably small capital."

Bankruptcy occurred on September 30, 1982, so the transfer was within a year before that date. The defendant disputes each of the other three elements.

Defendant concedes that the $250,000 was paid to him from the debtor's account, but argues that the money was merely in the debtor's account as a convenience and to earn interest and, therefore, was not the debtor's property.

The debtor is a Toronto commodities trading merchant. Defendant is its sole stockholder and chief executive. He also controls and manages the debtor's wholly-owned subsidiary, Lynbud Investments, Ltd., a Toronto dealer in precious metals, coins and jewelry which at that time did a $100 million annual business.

Defendant's position is that he was owed far more than the amount in question by Lynbud for accrued salary and commissions, that nine days earlier he had caused Lynbud to sell some of its inventory for $359,000 which was deposited with the debtor to earn interest and that the $250,000 which he withdrew, so to speak, was payment toward his accrued salary. He used the money to close the purchase of a Palm Beach condominium which cost $260,000.

The books and records of the two companies do not support defendant's contention. The earlier transaction of September 23, 1981 is credited on the debtor's books as a payment from Lynbud in reduction of its then intercompany obligation to the debtor of over $800,000. It was used immediately by the debtor for the purchase of a certificate of deposit and was carried as part of a commingled asset of the debtor thereafter. Lynbud's books are consistent with this treatment.

█ The transaction of October 2, 1981 on the books of both companies shows a payment by the debtor to the defendant offset on the books of both companies by an increase in the account owed the debtor by Lynbud. Lynbud's books also show a credit for Lynbud against the $500,000 salaries account owed by Lynbud to the defendant. The debtor never owed defendant or Lynbud anything at any time material to this case.

I find that the $250,000 transferred on October 2 was an interest of the debtor and was not the property of the defendant.

I have not overlooked the fact that the Toronto receiver appointed in December 1981 accepted defendant's version, issued him the Canadian equivalent of a W–2 statement for the amount paid, and that the defendant paid a Canadian income tax on that amount. The receiver no longer accepts the debtor's contention. It is not argued nor do I find any basis for estoppel against the plaintiff/trustee. The evidentiary value of the receiver's initial treatment of this transaction is overcome by the unambiguous record in the books maintained by the defendant.

Defendant next argues because he was owed much more by Lynbud in salary than he received from the debtor, the debtor received equivalent value for the $250,000 it paid him. The argument perishes in the face of the foregoing finding that the $250,000 was the debtor's property, not that of either the defendant nor Lynbud. Of course, "equivalent value" specified here may be the satisfaction of an antecedent debt *of the debtor*, § 548(d)(2)(A), but not the satisfaction of another party's debt.

Defendant, lastly, argues that this transaction did not leave the debtor with "unreasonably small capital". The debtor's books showed shareholder equity on the date of transfer to be $1.2 million and the net income of the debtor on that day was $727,-000. However, the debtor was a regulated trader in a highly volatile market. It was required by applicable Canadian securities regulations to maintain an adequate "net free capital". Its reports, prepared by the defendant's son, showed net free capital on September 30 and October 31, 1981 to be respectively $47,000 and $50,000.

Net free capital in this context is required to be liquid or virtually liquid assets. I find that the debtor's actual net free capital on October 2 was a substantial negative figure and was totally inadequate. Considering the nature of the debtor's business, therefore, it had "unreasonably small capital" at the time of the transfer notwithstanding its corporate balance sheet on that date.

I will not review at length the evidence touching this point other than to say that I find the debt owed by Lynbud to the debtor to have been completely unsecured at all times, as the records of both companies reflected. I am convinced that Defendant's Exhibit S, which purports to provide security, was prepared long after the events in question here. But even if this debt had been secured, the collateral was woefully insufficient and could not be liquidated within ten days. The account owed by Lynbud, therefore, was never a "net free asset".

In fact, Lynbud has never paid a penny on that account after October 2 and after its liquidation, Lynbud's assets will not be sufficient to pay any part of this account.

The plaintiff/trustee has therefore carried its burden of establishing the October 2 transfer to be avoidable.

In count II, plaintiff claims he is entitled to treble damages and attorneys' fees under Fla.Stat. § 812.035(7), because 11 U.S.C. § 544(b) permits the trustee to avoid:

> "any transfer ... that is voidable under applicable law..."

The Florida statute does not permit avoidance of a transfer. It provides a treble damage civil claim for:

> "Any person who is injured in any fashion by reason of any violation of the provisions of ss. 812.012–812.037 [of the Florida Statutes]."

Plaintiff points to § 812.014, a part of the state criminal code which defines the crime of theft.

To begin with, I do not believe that the federal statute incorporates by reference the state provision for treble damages. If it does, no criminal violation has been established here. Defendant was not charged with a crime. The evidence before me does not establish (nor was it alleged) that defendant had a criminal intent. He concealed nothing. In fact, the open record

on the books of his company and his tax return immediately revealed what he was doing.

Defendant's motion to dismiss count II is granted and this count is dismissed with prejudice.

▇▇▇ Plaintiff also seeks interest on the $250,000 from the date of transfer at the rate of 12% under § 687.01, Florida Statutes. Federal not state law is controlling here. 28 U.S.C. § 1961; *Woolfson v. Doyle*, 180 F.Supp. 86 (S.D.N.Y.1960). In accordance with the statute, plaintiff is entitled to interest from the date of judgment. The award of pre-judgment interest is subject to the court's discretion. *In re Roco Corp.*, 37 B.R. 770, 774 (Bkrtcy.D.R.I. 1984). It is well settled that interest upon a voidable preference recovered by a trustee in bankruptcy should be computed from the date of demand for its return or in the absence of a demand, from the date of the commencement of the suit for recovery. *Palmer v. Radio Corporation of America*, 453 F.2d 1133, 1140 (5th Cir.1971). I find the principles enunciated by the Fifth Circuit to be equally applicable to the avoidance of this fraudulent transfer. Therefore, the judgment entered in this proceeding shall bear interest from August 3, 1984 at the rate of 10.33%.

As is required by B.R. 9021(a), a separate judgment will be entered avoiding the October 2 transfer of $250,000, awarding a money judgment in favor of the trustee against the defendant in the amount of $250,000, plus interest, and subjecting the defendant's condominium purchased with the transfer to a constructive trust for the payment of the judgment. Costs may be taxed on motion.