LAY, Chief Judge.
The primary issues in this complex bankruptcy case involve the attempt by the trustee for the estate of Bellanca Aircraft Corp. (Bellanca) to set aside allegedly preferential transfers made to Anderson, *1277 Greenwood & Co. (AGCO), and its subsidiary, Anderson-Greenwood Aviation Corp. (Aviation). The bankruptcy court[1] set aside certain transfers as preferential, but held that other transfers were not preferential. The district court[2] affirmed and all parties have appealed. We affirm in part, but remand to the district court with directions to remand to the bankruptcy court for further findings.
I. TRUSTEE’S APPEAL
A. Preferential Transfers
The facts are set forth in the bankruptcy court’s sixty-three page opinion [3] and need only be briefly mentioned here. In 1976 Bellanca, Aviation, and AGCO entered into a series of transactions related to the manufacturing and marketing of aircraft. In July 1980 Bellanca filed Chapter 11 proceedings in bankruptcy.
The trustee sought to avoid a number of transfers of airplanes Bellanca made to AGCO. The bankruptcy court determined that most of the transfers were not preferential because not made “for or on account of an antecedent debt owed by” Bellanca. See 11 U.S.C. § 547(b)(2) (1982).[4] Underlying this determination was the finding that the transactions at issue involved airplane sales from Bellanca to AGCO rather than loans of money by AGCO to Bellanca with airplanes as security. The trustee attacks this finding, contending that the transactions were part of a floor plan financing arrangement.
The bankruptcy court found, however, that the parties intended the transfers to be sales. As the bankruptcy court stated, the parties “intended to and did implement a financing plan which shared many of the attributes of a revolving credit line” — a plan that was “certainly subject to contradictory interpretations * * 56 B.R. at 374^-75. Nevertheless, based on the testimony and evidence received, the court found that the parties intended that AGCO would not be reimbursed for the funds dispersed to Bellanca unless third parties subsequently bought the airplanes. 56 B.R. at 375. Thus, the hallmark of a loan —an absolute right to repayment of funds advanced — was missing. See, e.g., United States v. Investors Diversified Servs., Inc., 102 F.Supp. 645, 647 (D.Minn.1951). Stated simply, the court found that title to the airplanes passed from Bellanca to AGCO for a price. See Minn.Stat. § 336.2-106(1) (1986) (defining a sale as “the passing of title from the seller to the buyer for a price”). Although witness testimony and documentary evidence presented conflicting versions of the parties’ intent, “[wjhere there are two permissible views of the evidence, the factfinder’s choice between them cannot be clearly erroneous.” Anderson v. City of Bessemer City, 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). We therefore affirm the finding that the transactions between Bellanca and AGCO were sales.
The trustee next contends that the bankruptcy court erred in holding that the time of perfection of AGCO’s interests in the planes was governed by Minnesota law. An interest is perfected when a “creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee.” § 547(e)(1)(B). State law ordinarily determines when a creditor on a contract cannot acquire a superior judicial lien. See Carlson v. Farmers Home Admin. (In re Newcomb), 744 F.2d 621, 625-26 (8th Cir.1984). The trustee argues that state laws regarding perfection of interests in aircraft have been preempted by the Federal Aviation Act, 49 U.S.C.App. § 1403(c) (FAA), which requires aircraft bills of sale to be filed with the *1278 Secretary of Transportation to validate conveyances of aircraft.[5]
The FAA provides that until the bill of sale has been filed, a conveyance of aircraft is invalid against any person “other than the person by whom the conveyance or other instrument is made or given * * 49 U.S.C.App. § 1403(c). The conveyance is nevertheless valid as between the buyer and the seller. As we held in Compass Ins. Co. v. Moore, 806 F.2d 796, 799 (8th Cir.1986), “a judgment creditor’s lien on personal property is merely derivative of the judgment debtor’s rights and interests in such property.” If the seller of the planes has lost its interest in them, a subsequent judgment creditor of the seller cannot obtain an interest in the planes. Id.[6] Thus, because the FAA does not address when an airplane transfer is valid as against a judgment creditor of the trans-feror, the lower courts were correct to apply state law to determine when AGCO’s interests were perfected.
We therefore reject the trustee’s challenge to the holding that the transfers were not preferential, with the exception of three transfers — those identified by work order numbers B-129, B-130, and B-138— which require further discussion.
Bellanca sold three planes to third parties after it had sold them to AGCO. According to the district court, the third parties paid Bellanca, which deposited the checks to its general account and then drew its own checks to pay AGCO.
The district court held that these payments were not preferential because the proceeds of the airplane resales never became Bellanca’s property; a necessary component of a preferential transfer is that the property transferred be “property of the debtor.” See Brown v. First Nat’l Bank, 748 F.2d 490, 491 (8th Cir.1984); § 547(b). The district court’s analysis was limited to the following:
The bankruptcy court reasonably found that the aircraft at issue belonged to AGCO, not to Bellanca. The proceeds from those sales also belonged to Bellan-ca.[sic] The mere fact that Bellanca deposited the proceeds in its own account before transferring them to AGCO does not mean that the proceeds were property of Bellanca. “The mechanics of the transfer may not necessarily be determinative.” Brown v. First National Bank of Little Rock, 748 F.2d 490, 492 n. 6 (8th Cir.1984).
In re Bellanca Aircraft Corp., Nos. Civ. 4-86-128, 699; Bky. 4-81-959; Adv. 4-81-323, slip op. at 16 (D.Minn. May 12, 1987).
These findings are insufficient to allow us to determine if the law was correctly applied, and we must remand for further findings.[7] A finding that the planes did not belong to Bellanca does not automatically mean that proceeds of the plane sales *1279 were not “property of the debtor” within the meaning of the Bankruptcy Code. Whether the proceeds became property of the debtor is initially a question of state law that depends on several unresolved factual issues. See, e.g., N.S. Garrott & Sons v. Union Planters Nat’l Bank (In re N.S. Garrott & Sons), 772 F.2d 462, 466 (8th Cir.1985) (nature and extent of debtor’s interest in property are determined by state law).
The trustee asserts that the general rule is that “[d]eposits in a bank to the credit of a debtor become property of the estate under section 541(a)(1).” 4 Collier on Bankruptcy ¶ 541.11 at 541-71 (15th ed. 1988) (hereinafter, “Collier”).[8] The trustee then contends that to avoid application of this rule and prove that the proceeds were not property of Bellanca’s, AGCO was required both to prove its entitlement to a constructive trust on those funds and to trace the funds, neither of which AGCO apparently even attempted to do.
AGCO counters that because Bellanca received the resale payments as agent for AGCO, Bellanca never had any sort of an interest in those payments. AGCO further contends that the evidence did not show that AGCO instructed Bellanca to deposit the proceeds in Bellanca’s general account; the implication is that Bellanca wrongfully converted the funds, thereby entitling AGCO to a constructive trust. Finally, AGCO argues that because Bellanca placed the proceeds in a bank account the balance of which never fell below the amount of the proceeds, the proceeds were adequately traced pursuant to the “lowest intermediate balance” rule.
All of these arguments, however, are premised on factual assertions unsupported by findings of the bankruptcy court. The court did not explicitly make a finding that Bellanca sold the planes as AGCO’s agent, nor did the court find whether Bellanca segregated the funds pending payment to AGCO.[9] We therefore find it necessary to remand for the bankruptcy court to make the factual findings necessary to determine the propriety of the district court’s conclusion that property seemingly in the hands and under the control of Bellanca was not “property of the debtor.”
B. Subsequent Advances of New Value
The trustee’s next set of challenges to the judgment relates to AGCO’s partially successful invocation of the section 547(c)(4) “subsequent advance” defense to the trustee’s recovery of preferential transfers. The bankruptcy court held that certain payments AGCO made to Bellanca’s creditors, employees, and suppliers constituted subsequent advances of new value. The trustee contends that the lower courts erred in two ways in allowing AGCO these new value setoffs.
1. Payments to Third Parties on Bellanca’s Debts
The trustee first asserts that AGCO’s payments to Bellanca’s creditors, suppliers, and employees on behalf of Bellanca were not “new value” within the meaning of sections 547(a)(2) and 547(c)(4). New value “does not include an obligation substituted for an existing obligation.” § 547(a)(2). The trustee argues that AGCO did not give Bellanca new value when AGCO paid Bel-lanca’s creditors because rather than owing money to third party creditors, Bellanca simply owed it to AGCO instead. Both the *1280 bankruptcy and district courts rejected the trustee’s argument. We affirm their ruling.
We find the trustee’s view of new value too narrow. First, the statutory language itself suggests that payments need not be made directly to the debtor to be considered new value; the statute allows setoffs for new value given “to or for the benefit of the debtor * * § 547(c)(4) (emphasis added). The words “for the benefit of” would be superfluous were we to hold that new value consists only of payments made directly to the debtor. A statute should not be interpreted so as to render the legislature’s language mere sur-plusage. See 2A N. Singer, Statutes and Statutory Construction § 46.06 (Sands 4th ed. 1984).[10]
Second, several cases hold or suggest that payments to third party creditors of the debtor can constitute new value.[11] The trustee, however, has not cited, nor have we located, any cases that support the proposition that such payments are excluded per se from the definition of new value.
Third, we are unpersuaded by the trustee’s argument that allowing payments to third party creditors to constitute new value contravenes the fundamental bankruptcy policy of equitable treatment of creditors. The general avoidance portion of the Bankruptcy Code was intended to “facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor.” H.R.Rep. No. 595, 95th Cong., 1st Sess., reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6138. Nevertheless, the subsequent advance rule, section 547(c)(4), “was not enacted to ensure equitable treatment of creditors, but rather is intended to encourage creditors to deal with troubled businesses.” Chaitman v. Paisano Automotive Liquids, Inc. (In re Almarc Mfg., Inc.), 62 B.R. 684, 687-88 (Bankr.N.D.Ill.1986) (footnote omitted); see also Gold Coast Seed Co. v. Spokane Seed Co. (In re Gold Coast Seed Co.), 30 B.R. 551, 553 (9th Cir.1983) (“The purpose of § 547(c)(4) is precisely to encourage trade creditors to continue dealing with troubled businesses.”). As the bankruptcy court cogently stated, the trustee
misstates the policy behind the subsequent advance rule, though, by suggesting that the test is whether a new value advance makes available additional assets for distribution to creditors. The clear intent of Congress is that new value advanced by creditors should be available to debtors in the conduct of their business. Consequently, a debtor’s purchase of supplies or payment of employee salaries and other expenses with new value received is the fully anticipated result of a new value advance, even though the immediate effect of such may be to temporarily expend funds otherwise available for distribution. That new value might be routed directly from a preferred creditor to a third party on behalf and for the benefit of a debtor, rather than to the debtor first, does not alter the fact that the estate is augmented, albeit indirectly, in a manner contemplated by the language of section 547(c)(4).
56 B.R. at 393.
Finally, we are convinced that the trustee misconstrues section 547(a)(2) when he argues that AGCO’s payment of Bellanca’s debts to third parties constituted “an obligation substituted for an existing obligation.” What AGCO contributed for Bel-lanca’s benefit was money, albeit paid to creditors rather than directly to Bellanca. AGCO’s contribution therefore falls *1281 squarely within the definition of new value, and is in no way comparable to “substituted obligation” cases, in which creditors postpone collecting debts by substituting a new obligation of the debtor’s for the old one. See, e.g., Levine v. Central States, Southeast and Southwest Areas Pension Fund (In re Ottawa Cartage, Inc.), 55 B.R. 371 (Bankr.N.D.Ill.1985); In re Duffy, 3 B.R. 263 (Bankr.S.D.N.Y.1980).[12]
2. Entitlement to New Value Defense
The trustee’s last objection to the lower courts’ new value findings is that AGCO should not have been permitted offsets for the payments it made to Bellanca’s Eagle aircraft suppliers. The trustee contends that: (1) Aviation purchase orders were used to purchase the supplies; (2) Aviation thus was bound to pay for the supplies; (3) upon receiving the supplies, Bellanca became obligated to pay Aviation; and (4) when AGCO paid Bellanca’s debt to Aviation, Bellanca became indebted to AGCO rather than Aviation. Again, the trustee argues, this is not new value because AGCO merely substituted an obligation for an existing obligation.
We think this argument misses the mark. The parties stipulated before trial that AGCO paid the Eagle vendors directly. By using its purchase forms, Aviation did not advance to Bellanca “money or money’s worth in goods, services, or new credit * * § 547(a)(2). Only AGCO did so when it actually paid the debts owed the suppliers. We therefore affirm the judgment in this respect.
C. Prejudgment Interest
The trustee appeals the bankruptcy court’s refusal to award prejudgment interest on preferential transfers. The trustee urges that awards of prejudgment interest on preferential transfers are mandatory. We disagree. The bankruptcy court held that awards of prejudgment interest are discretionary and depend on whether the preferred creditor could have ascertained the amount of the preferential payment without a judicial determination. See, e.g., Merrill v. Allen (In re Universal Clearing House Co.), 60 B.R. 985, 1002 (D.Utah 1986); Becker v. Security Nat’l Bank (In re Four Seasons Sporting Goods, Inc.), 46 B.R. 528, 530 (Bankr.N.D.Cal.1985); Middleton v. Farmers State Bank, 45 B.R. 744, 749 (Bankr.D.Minn.1985); Bakst v. Presley (In re E.D. Presley Corp.), 44 B.R. 781, 784 (Bankr.S.D.Fla.1984); In re Roco Corp., 37 B.R. 770, 774 (Bankr.D.R.1.1984). There is no statutory authority for the proposition that the court must award the trustee prejudgment interest in this situation. See 4 Collier ¶ 550.02 at 550-6. We find no abuse of discretion in the bankruptcy court’s ruling.
D. Equitable Subordination of AGCO’s Claims
The trustee next contends that the lower courts erred in holding that AGCO’s and Aviation’s claims should not be subordinat *1282 ed to the claims of general unsecured creditors. The trustee argues that these claims should be subordinated under the bankruptcy court’s equitable powers as set forth in section 510(c)(1).
The courts have adopted a three-part test for determining whether equitable subordination is appropriate:
(i) The claimant must have engaged in some type of inequitable conduct.
(ii) The misconduct must have resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant.
(iii) Equitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy [Code].
Wilson v. Huffman (In re Missionary Baptist Foundation), 712 F.2d 206, 212 (5th Cir.1983); see also Estes v. N & D Properties, Inc. (In re N & D Properties, Inc.), 799 F.2d 726, 731 (11th Cir.1986); Sepco, Inc. v. Valley State Bank (In re Sepco, Inc.), 36 B.R. 279, 287 (Bankr.D.S.D.), aff'd, 750 F.2d 51 (8th Cir.1984).
The bankruptcy court found that neither AGCO nor Aviation had engaged in any inequitable conduct, even under the lesser showing required when the claimants are “insiders,” as here.[13] On appeal the trustee points to three examples of AGCO’s and Aviation’s inequitable conduct. First, the trustee contends that AGCO’s and Aviation’s receipt of preferential transfers is in itself inequitable conduct, because of the fiduciary duty imposed by Minnesota law on directors and officers of insolvent corporations to not “treat themselves to a preference over other creditors.” Snyder Elec. Co. v. Fleming, 305 N.W.2d 863, 869 (Minn.1981). We reject this reasoning because the trustee has not cited, nor have we uncovered, any Minnesota cases imposing a similar duty on persons in the position of AGCO and Aviation. Moreover, we decline to hold that receipt of a preference, without more, is the type of inequitable conduct that warrants subordination of a claim.
Second, the trustee claims that AGCO’s handling of the airplane transactions amounted to inequitable conduct. He appears to allege that AGCO failed to record aircraft transactions until immediately pri- or to Bellanca’s bankruptcy for the insidious purpose of preventing Bellanca’s creditors from discovering AGCO’s interest in the aircraft. Nothing in the record supports such an allegation; the bankruptcy court apparently credited testimony that “the delay in filing certain bills of sale with the F.A.A. was due to the expectation that the aircraft purchased by AGCO would be quickly resold to third parties.” 56 B.R. at 359.
Finally, the trustee points to certain press releases and SEC reports issued by Bellanca during the relevant time period that failed to disclose many of Bellanca’s dealings with AGCO and Aviation. The trustee asserts indirectly that AGCO or Aviation somehow caused these omissions. These nondisclosures nevertheless are insufficient to justify subordinating AGCO's claims. Even if failure to disclose significant facts regarding the debtor’s financial condition is inequitable, there is no evidence of injury to creditors caused by the nondisclosure. Cf. First Nat'l Bank v. Charles Blalock & Sons, Inc. (In re Just for The Fun of It of Tenn., Inc.), 7 B.R. 166, 180-81 (Bankr.E.D.Tenn.1980) (claim of creditor subordinated when creditor’s misrepresentations were explicitly found to have harmed specific other creditors).
Because the trustee has failed to persuade us that the lower courts were wrong in finding that AGCO and Aviation did not *1283 engage in inequitable conduct, we find it unnecessary to address the two remaining prongs of the equitable subordination inquiry.
E. Statute of Limitations
The bankruptcy court partially denied the trustee’s motion to amend his complaint and to permit the amended complaint to relate back to the date of the original complaint. The court held that two of the proposed amendments would not relate back to the date of the original complaint and therefore were barred by the two year statute of limitations prescribed for preference actions in section 546(a). The district court affirmed this order and the trustee appeals.
The trustee’s original complaint against AGCO and Aviation alleged that
Between July 30, 1979 and May 14, 1980, and within one year of the filing of the voluntary petition herein, Debtor transferred to Aviation and Anderson-Greenwood monies in an aggregate amount which is presently unknown to plaintiff but which plaintiff on information believes exceeded One Million, Seven Hundred Thousand Dollars ($1,700,-000.00); such transfers of said monies to defendants were made on account of an antecedent debt within the meaning of 11 U.S.C. § 547(b)(2).
(Emphasis added). While the original complaint thus alleged as preferences only transfers from Bellanca to AGCO and Aviation, the proposed amendments would have alleged as preferences to AGCO and Aviation both payments by Bellanca to third parties and payments by third parties to AGCO and Aviation.
Under Fed.R.Civ.P. 15(c) and Bankr.R. 7015, amendments to a complaint relate back to the date of the original complaint only when “the claim * * * asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading * * Although rule 15(c) is to be liberally construed, payments by Bellan-ca to third parties and by third parties to AGCO and Aviation are entirely different transactions from those alleged in the original complaint. As the bankruptcy court succinctly stated:
The test is whether [AGCO and Aviation] were put on notice that transfers of this type were included in [the trustee’s] complaint. These new claims involve numerous third-party vendors not previously mentioned in pleadings or discovery. The original complaint stated that the only transfers covered were those of monies from [the trustee] to [AGCO and Aviation]. I do not find it reasonable to assume [AGCO and Aviation] would have known the [third-party] transactions would be covered.
Bellanca, No. Bky 4-81-959, slip op. at 6 (Bankr.D.Minn. Aug. 12, 1986); see also Baldwin County Welcome Center v. Brown, 466 U.S. 147, 150 n. 3, 104 S.Ct. 1723, 1725 n. 3, 80 L.Ed.2d 196 (1984) (“The rationale of Rule 15(c) is that a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide.”) Because we find that the bankruptcy court did not abuse its discretion in holding that the proposed claims would not relate back, we affirm the judgment that the two year statute of limitations barred the trustee from asserting those claims.
II. AGCO’s APPEAL
AGCO[14] also appeals from the judgment, citing three alleged errors.
A. Timing of Payments by Check Under Section 547
In deciding whether certain of Bellanca’s transfers to AGCO and Aviation were intended to be contemporaneous exchanges for new value or were offset by subsequent advances of new value, the bankruptcy court held that check transfers took effect on the date the checks were honored by the drawee bank. AGCO disputes this holding, contending that the majority and *1284 better-reasoned rule is that under sections 547(c)(1) and (4) a transfer takes effect upon delivery of the check. See generally Ellis, Preferential Payments by Check: At What Point is Payment Made?, 16 U.C.C. L.J. 46 (1983); Note, Timing of Payments by Check Under Section 547 of the Bankruptcy Code, 7 Cardozo L.Rev. 887 (1986); Note, “Transfers by Check”: The 90-Day Rule of Preference Recovery Under Section 547(b) of the Bankruptcy Code, 1987 Duke L.J. 712. AGCO asserts that if the delivery rule were applied, “several significant transfers” from Bellanca to AGCO would not be deemed preferential because they were part of contemporaneous exchanges or were offset by subsequent advances of new value. AGCO fails to identify these “significant transfers,” however, and does not indicate what, if any, effect on the judgment a reversal by this court would have. The district court declined to resolve this issue, stating that AGCO and Aviation did not dispute that “a reversal on this legal point would have no effect on the three transfers apparently at issue — checks for $600,000, $100,000 and $150,000.” Slip op. at 23. Furthermore, the district court stated that the parties conceded the issue has little importance here, but they argued that it should be decided because the issue is important to the commercial community. This court does not render advisory opinions. Accordingly, we will not address this issue.
B. Post-Petition Advances of New Value
The bankruptcy court held, and the district court affirmed, that any advances of new value AGCO made to Bellanca after Bellanca filed its bankruptcy petition could not be used to offset pre-petition preferences from Bellanca to AGCO. AGCO asserts that this holding is incorrect as a matter of law because under section 547(c)(4) post-petition advances of new value may be applied to offset preferential transfers.
AGCO first argues that by its terms, section 547(c)(4) is not limited to advances of new value made before the debtor filed its petition: “The trustee may not avoid * * * a transfer to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value * * *.” § 547(c)(4) (emphasis added). Emphasizing the expansive words “after such transfer”, however, is erroneous, because of the significant subsequent words: “to the extent that * * * such creditor gave new value to or for the benefit of the debtor * * *.” Id. (emphasis added). These words imply that subsequent advances of new value are only those given pre-petition, because any post-petition advances are given to the debtor’s estate, not to the debtor. See 56 B.R. at 396; see also Century Brass Prod., Inc. v. International Union, UAW (In re Century Brass Prod., Inc.), 71 B.R. 77, 79 (Bankr.D.Conn.987).
AGCO also asserts that the policies underlying the section 547(c)(4) defense will not be served unless it is permitted new value setoffs for post-petition advances. The bankruptcy court responded to these arguments by stating:
Subsequent to the filing of a petition, creditors are encouraged on a somewhat more limited basis to conduct business activities with the debtor. Section 364 of the Code, for example, permits the debt- or to incur on behalf of the estate both unsecured and secured debt in a manner that affords varying degrees of protection to creditors continuing to do business with such debtor postpetition. Moreover, a creditor may also look to section 503(b)(1) for potential reimbursement even though a prior arrangement was neither reached with the debtor nor approved by the court under section 364. While these and other provisions do not permit entirely unrestricted interaction between a debtor and the business community, they do reflect a balancing of the multitude of interests which converge upon the filing of a petition. Where a single creditor freely offsets otherwise avoidable transfers with funds expended postpetition, the potentially conflicting interests of other creditors are inadequately represented and may be prejudiced. To permit such offsets notwith *1285 standing possible prejudice to other creditors would ignore the orderly mechanisms established by Congress to protect all interested parties concerned.
56 B.R. at 396-97 (footnote omitted). We agree with this reasoning.
C. Valuation of Aries License and Eagle Contract
The bankruptcy court assessed the value of Bellanca’s assets to determine if Bellanca was insolvent during the pre-petition period; a transfer is preferential only if made while the debtor was insolvent. § 547(b)(3). AGCO’s final contention on appeal is that the finding that Bellanca was insolvent was incorrect because it was based on the erroneous finding that two of Bellanca’s assets were worthless.
The two assets at issue were contract rights: Bellanca’s exclusive right, granted by Aviation, to manufacture and market the aircraft named “Aries T-250” and its contract to manufacture an aircraft line for Eagle Aircraft Co. and Eagle Aircraft Sales Co. (Eagle). Both the Aries license and the Eagle contract restrict Bellanca’s right to assign by requiring the consent of Aviation and Eagle, respectively. The bankruptcy court determined that Aviation’s and Eagle’s consent could be withheld for any reason whatsoever, arbitrarily or rationally. Thus, the court concluded:
Bellanca’s conditional right to assign under each contract must be viewed as the functional equivalent of no right whatsoever. The limitations on alienability contained in each compel the conclusion that neither contract had any market value. See, Allan v. Archer-Daniels-Midland Co., (In re Commodity Merchants, Inc.), 538 F.2d 1260, 1264 (7th Cir.1976). It is likewise clear that these limitations negate any going concern value in either contract to a prospective purchaser of Bellanca’s operation as a whole.
56 B.R. at 388.
AGCO argues that the court’s conclusion is mistaken because it overlooks the obligation of good faith imposed on sales contracts by the Uniform Commercial Code (UCC). See Minn.Stat. § 336.1-203 (1986). Included within this good faith obligation, according to AGCO, is the duty not to withhold consent to assign reasonably. As the district court pointed out, however, the UCC does not prevent parties to a contract from prohibiting the delegation of contractual duties — implying that consent to assign may be reasonably or unreasonably withheld. Moreover, AGCO has not cited any Minnesota or other states’ cases holding that the UCC good faith obligation encompasses a duty not to withhold consent to assign unreasonably.[15]
AGCO cites to Board of Trade v. Johnson, 264 U.S. 1, 44 S.Ct. 232, 68 L.Ed. 533 (1924), in support of its position. In Board of Trade, however, the Supreme Court held only that a Board of Trade membership that could be sold by its owner only with the approval of the Board of Directors was includable in the debtor’s estate. Id. at 12, 44 S.Ct. at 234. The Court stated no opinion as to whether and to what extent the membership had value.
The only analogous case that we have located, and which was relied on by both lower courts, is Allan v. Archer-Daniels-Midland Co. (In re Commodity Merchants, Inc.), 538 F.2d 1260 (7th Cir.1976), which is contrary to AGCO’s position. The Seventh Circuit held in Allan that due to limitations on alienability, certain of a debt- or’s contracts had no market value. Id. at 1264. We adopt this reasoning and find it was properly applied by the lower courts.
III. CONCLUSION
We affirm the judgment in its entirety, with the exception of the ruling regarding transfer of the planes identified in work orders B-129, B-130, and B-138. We remand to the district court with instructions to remand to the bankruptcy court for fur *1286 ther factual findings m accordance with this opinion.
The petition of cross-appellant, Anderson-Greenwood Aviation Corp., for rehearing by the panel is denied. The court, on its own motion, amends its judgment in the following manner:
1. That the district court should certify to this court any further findings made by the bankruptcy court and any further review made by the district court of those findings within a reasonable time after the district court has reviewed such findings in accord with this court’s opinion. In the event the matter is not otherwise disposed of by and between the parties, the findings of the bankruptcy court and the review of those findings by the district court may be certified to this court for further review without the necessity of filing a new notice of appeal.
2. That the court vacates that portion of its opinion as related to AGCO’s appeal under Part II-A entitled “Timing of Payments by Check Under Section 547.” This court remands that issue to the district court on the ground that the district court declined to resolve the issue. AGCO now asserts that it did not concede the mootness of the issue in the district court nor in this court. Although the reasons stated by AGCO for not being specific in its briefs are somewhat dubious, we nonetheless feel in the interests of justice that AGCO should have a right to assert its contention on this issue before the district court and the district court should then determine whether or not there is mootness involved and if not, render its judgment on the issue. Any decision by the district court on this matter may be certified to this court at the same time that certification is made relating to the additional findings required of the bankruptcy judge. Certification may take place without a new notice of appeal and this court, upon receiving the certification by the district court, may then set down any additional briefing schedule if necessary.
The issuance of the mandate of this court’s judgment will now be deferred until such time as this court rules upon the certified findings by the district court, or until such time this court determines otherwise. If the parties dispose of this matter so as to obviate further review, they are directed to notify the clerk instanter.

. The Honorable Margaret A. Mahoney, United States Bankruptcy Judge for the District of Minnesota.

. The Honorable Diana P. Murphy, United States District Judge for the District of Minnesota.

. 56 B.R. 339 (Bankr.D.Minn.1985).

. All subsequent section references shall be to Title 11 of the United States Code as in effect on the dates relevant to this opinion, unless otherwise noted.

. 49 U.S.C.App. § 1403(c) provides:
No conveyance or instrument the recording of which is provided for by subsection (a) of this section shall be valid in respect of such aircraft, aircraft engine or engines, propellers, appliances, or spare parts against any person other than the person by whom the conveyance or other instrument is made or given, his heir or devisee, or any person having actual notice thereof, until such conveyance or other instrument is filed for recordation in the office of the Secretory of Transportation * * *.

. The trustee attempts to distinguish Compass on the ground that Compass involved priority rather than perfection of interests in aircraft; the Supreme Court has held that state law continues to determine priorities of interests in aircraft. See Philko Aviation, Inc. v. Shacket, 462 U.S. 406, 413, 103 S.Ct. 2476, 2480, 76 L.Ed. 2d 678 (1983). Yet the Compass decision is not so limited. After noting that attachment is a necessary step in the perfection of a security interest, the court stated: "As a judgment creditor can acquire no rights superior to those of its judgment debtor, [a] judgment lien could not attach [to] aircraft which had been sold by the judgment debtor * * 806 F.2d at 799 (emphasis added). Thus, although the Compass court stated that it was resolving a priority dispute, its reasoning is directed toward determining whether a judgment lien creditor could perfect an interest in property in which the judgment debtor no longer had an interest.

.It is not clear whether the bankruptcy court specifically considered this issue. The court seemed to treat the transfers of B-129, B-130, and B-138 its being identical to transfers of other planes, concluding as to all 16 aircraft at issue on appeal that "[t]ransfers concerning these aircraft were not preferential.” 56 B.R. at 381.

. Because "property of the estate” includes "all legal or equitable interests of the debtor in property * * * [,]’’ § 541(a)(1), "property of the debt- or” as used in the definition of a voidable preference, see § 547(b), is for these purposes equivalent to "property of the estate." See General Office Furniture Wholesalers, Inc. v. U.S. Furniture Indus., Inc. (In re General Office Furniture Wholesalers, Inc.), 42 B.R. 232, 235 (Bankr.E.D.Va.1984).

. AGCO asserts that "Bellanca always accounted for the payments in a separate account for monies belonging to AGCO"; the trustee asserts that "[t]he proceeds were deposited into Bellan-ca’s general checking account, where they mingled with Bellanca’s other funds.” The district court stated that Bellanca deposited the checks "to its general account,” yet the bankruptcy court made no such finding. We note that in a bankruptcy proceeding, "the district court may not make its own independent factual findings.” Wegner v. Grunewaldt, 821 F.2d 1317, 1320 (8th Cir.1987).

. We particularly hesitate to narrow the scope of the statute when the language Congress chose in amending this section is significantly broader than the predecessor language. See 4 Collier at 547-48 n. 1 (“Former Section 60c applied only to subsequent ‘credit ... for property which becomes a part of the debtor’s estate.’ Section 547(c)(4), however, applies broadly to any subsequent ‘new value,’ as defined in section 547(a)(2).’’).

. See, e.g., Drabkin v. A.I. Credit Corp., 800 F.2d 1153, 1158 (D.C.Cir.1986); Carter v. Homesley (In re Strom), 46 B.R. 144, 149 (Bankr.E.D.N.C.1985); LaRose v. Crosby & Son Towing, Inc. (In re Dick Henley, Inc.), 38 B.R. 210, 214 (Bankr.M.D.La.1984); cf. Butz v. Bancohio Nat'l Bank (In re Manns), 31 B.R. 893, 897 (Bankr.S.D.Ohio 1983).

. The trustee singles out for challenge the lower court's finding that AGCO’s payments of Bel-lanca’s debts for which AGCO had guaranteed payment constituted subsequent advances of new value. The trustee attacks the theory the bankruptcy court used to arrive at its conclusion:
Upon honoring a guarantee, the guarantor gives new value for the benefit of a debtor and is thereby subrogated to the rights of the guaranteed supplier or lender. The supplier’s or lender’s claim to new value then vanishes and the guarantor becomes entitled to a section 547(c)(4) offset as to preferential transfers made prior to the original advance of new value by such supplier or lender.
56 B.R. at 394.
We are inclined to agree with the trustee’s contention that this reasoning is erroneous. It presumes that Bellanca’s suppliers or lenders would be entitled to a new value defense when there was no showing that these third parties had received preferential transfers — the sine qua non of a new value defense. Nevertheless, we agree with the district court that there is an alternative ground for concluding that AGCO's guarantees of payment and subsequent honoring of those guarantees constituted subsequent advances of new value. AGCO’s defense is not derivative of the rights of the suppliers and creditors; by guaranteeing and subsequently paying debts incurred by Bellanca, AGCO itself gave new value for the benefit of the debtor. See Eisenberg v. JL Int'l, Ltd. (In re Sider Ventures & Serv. Corp.), 33 B.R. 708, 712-13 n. 2 (Bankr.S.D.N.Y.1983).

. The bankruptcy court determined that AGCO and Aviation were "insiders" because they were "person[s] in control of the debtor” under section 101(25)(B)(ii). See 56 B.R. at 389. The inequitable conduct that warrants subordinating a claim depends on the status of the claimant. When the claimants are insiders of the debtor, the claimants’ conduct is closely scrutinized, and the trustee need prove only that they breached a fiduciary duty or engaged in conduct that is somehow unfair. See, e.g., Anaconda-Ericsson, Inc. v. Hessen (In re Teltronics Servs., Inc.), 29 B.R. 139, 168-72 (Bankr.E.D.N.Y.1983); In re N & D Properties, 799 F.2d at 731; see generally DeNatale and Abram, The Doctrine of Equitable Subordination as Applied to Non-management Creditors, 40 Bus.Law. 417 (1985).

. Aviation joined in AGCO’s notice of appeal and designates itself a cross-appellant. No judgment was entered against Aviation, however, and therefore Aviation had no right of appeal.

. The cases AGCO cites hold that a lessor may not unreasonably refuse to consent to a lessee’s assignment of die lease or subleasing of the premises. See, e.g., Kendall v. Ernest Pestana, Inc., 40 Cal.3d 488, 709 P.2d 837, 220 Cal.Rptr. 818 (1985). This is a minority position and, even if applicable by analogy here, not the law in Minnesota. See Gruman v. Investors Diversified Serv., 247 Minn. 502, 78 N.W.2d 377 (1956).